No. 03-170

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 324

JANICE RENVILLE,

       Plaintiff and Appellant,

  v.

CHARLA MAY FREDRICKSON,
Personal Representative of the Estate of
SHERLEE YORK FREDRICKSON, Deceased,

       Defendant and Respondent.

APPEAL FROM:    District Court of the Eighth Judicial District,
                  In and for the County of Cascade, Cause No. ADP 2001-212
                  The Honorable Julie Macek, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              Dane J. Durham, Attorney at Law, Missoula, Montana; Joseph C. Engel, III,
              P.C., Attorney at Law, Great Falls, Montana

       For Respondent:

              Robert F. James, Mark D. Meyer, Ugrin, Alexander, Zadick & Higgings,
              P.C., Great Falls, Montana; Todd A. Stubbs, Graybill, Ostrem & Crotty,
              PLLP, Great Falls, Montana

Submitted on Briefs:  January 26, 2004

Decided:  November 16, 2004

Filed:

_____
                          Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1   This Court issued its original Opinion in this case on August 31, 2004. *See Renville v. Frederickson*, 2004 MT 239, 322 Mont. 503, ___ P.3d ___ (*Renville I*). Frederickson filed a Petition for Rehearing on September 15, 2004. Renville filed her Objections to the Petition for Rehearing on September 23, 2004. In her Petition, Frederickson raised an issue that was neither briefed nor argued in the original briefs submitted to this Court. While the failure to raise this issue initially on appeal would normally justify a summary denial of the Petition for Rehearing, we conclude that, in the interest of clarity and uniformity of case law, we must address the issue raised in the Petition, and affirm the District Court's ruling. On November 9, 2004, we issued an Order withdrawing our Opinion in *Renville I*. We replace it with this superseding Opinion.

¶2   Janice Renville (Renville) sued the Estate of Sherlee York Frederickson (Frederickson or the Estate) seeking damages for emotional distress and loss of consortium arising out of the death of Renville's adult son who was killed in an automobile accident while a passenger in a car driven by Frederickson. Renville appeals the District Court's Order granting the Estate's Motion for Summary Judgment. As indicated above, we affirm.

## ISSUE

¶3   We restate the issue as follows: Did the District Court err in concluding that Renville's claims for negligent infliction of emotional distress (NIED) and loss of consortium failed as a matter of law?

## FACTUAL AND PROCEDURAL BACKGROUND

2

¶4     On September 1, 2001, forty-four year old Gary Sorenson (Sorenson) died in an automobile accident. The car in which Sorenson was a passenger was driven by Sherlee York Frederickson (Frederickson). Frederickson also died in the accident.

¶5     The record is unclear on Sorenson's marital status at the time of his death, but we know he was survived by two children, numerous siblings, and his mother. His son, Jason Sorenson, was named Personal Representative of his father's estate. Jason prosecuted a wrongful death claim against Frederickson's estate. That action was settled in November 2001.

¶6     Sorenson's mother, Renville, learned of her son's death when a sheriff arrived at her home in the early morning hours of September 2, 2001, and notified her that Sorenson had died as a result of injuries sustained in the automobile accident. Renville reacted very emotionally. She began to scream and her body shook. She claims that she had to take tranquilizing medicine for several days and that six months after his death, she had no interest in her home and had repeated crying spells.

¶7     In March 2002, Renville filed suit against the Frederickson Estate, asserting that Frederickson's negligence had caused Sorenson's death. She sought damages for emotional distress and loss of consortium.

¶8     The Estate moved for summary judgment arguing that Renville's emotional distress claim failed as a matter of law because Renville's allegations of emotional distress did "not rise to the level set forth by the Montana Supreme Court as necessary to establish a claim for emotional distress." Additionally, the Estate maintained that Renville's loss of

consortium claim must fail because Montana does not recognize a loss of consortium claim for the death of an adult child. The District Court agreed and, in January 2003, granted Frederickson's Motion for Summary Judgment. Renville appeals.

## STANDARD OF REVIEW

¶9 Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. Our standard in reviewing a district court's summary judgment ruling is *de novo. Watkins Trust v. Lacosta,* 2004 MT 144, ¶ 16, 321 Mont. 432, ¶ 16, 92 P.3d 620, ¶ 16 (citation omitted). Accordingly, such review affords no deference to the district court's decision and we independently review the record, using the same criteria used by the district court, *i.e.*, Rule 56, M.R.Civ.P., to determine whether summary judgment is appropriate. Moreover, all reasonable inferences which may be drawn from the offered proof must be drawn in favor of the party opposing summary judgment. *Watkins Trust,* ¶ 16.

## DISCUSSION

¶10 Renville argued to the District Court that she suffered extreme emotional distress as a result of her son's death which she alleged was caused by Frederickson's negligence. The Estate countered Renville's allegations with a two-fold argument: 1) because Renville did not contemporaneously witness the underlying accident that killed her son or its immediate aftermath, under Montana law she may not prosecute an independent claim for NIED; and 2) Renville's emotional distress from the loss of her son was not "so severe that no reasonable person could be expected to endure it."(*quoting Sacco v. High Country*

4

*Independent Press* (1995), 271 Mont. 209, 234, 896 P.2d 411, 426). The District Court did not address Frederickson's "contemporaneous witness" argument. Rather, it held that, under *Sacco*, her emotional distress was insufficiently severe to support her NIED claim.

¶11 The State of Montana has long recognized "negligent infliction of emotional distress" as a compensable tort and an independent cause of action. In *Sacco*, we engaged in a comprehensive analysis of the historical development of emotional distress claims; therefore, we need not do so again here. As the District Court recognized, we set forth in *Sacco* a threshold level of emotional distress that must be met for such claims to be compensable. We said:

> Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquillity is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. **The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it.** The intensity and the duration of the distress are factors to be considered in determining its severity. Severe distress must be proved. . . . (emphasis added).

*Sacco*, 271 Mont. at 234, 896 P.2d at 426.

¶12 We acknowledge that "severe" and "serious" emotional distress may manifest in various and subtle ways. In *Henricksen v. State*, we reiterated that the guidance provided in the *Restatement 2nd of Torts*, § 46, comment k, was one commonly-used method for identifying sufficiently severe and serious emotional distress:

5

> In cases where there is a physical manifestation of bodily harm resulting from emotional distress, such as PTSD, this bodily harm is sufficient evidence that the emotional distress suffered by the plaintiff is genuine and severe. As explained in the *Restatement 2nd of Torts*, § 46, comment k, '[n]ormally, severe emotional distress is accompanied or followed by shock, illness, or other bodily harm, which *in itself* affords evidence that the distress is genuine and severe.' (Emphasis inoriginal.) This manifestation assures that only genuine harm, not fraudulent claims, will be compensated.

*Henricksen v. State*, 2004 MT 20, ¶ 79, 319 Mont. 307, ¶ 79, 84 P.3d 38, ¶ 79.

¶13 In *Sacco*, we also noted that serious mental distress could be found "where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Sacco*, 271 Mont. at 231, 896 P.2d at 424 (citation omitted). Other factors to be considered in determining the severity of emotional distress are the intensity and duration of the distress, circumstances under which the infliction occurred, and the party relationships involved. By evaluating these factors, one may determine when and where a reasonable person should or should not have to endure certain kinds of emotional distress. *Sacco*, 271 Mont. at 234, 896 P.2d at 426 (citation omitted).

¶14 Our *de novo* review of the record leads us to conclude that Renville has not presented evidence establishing that the distress caused by her son's death was so severe "that no reasonable person should be expected to endure it." The only substantive testimony in the record on this issue is Renville's sworn statement dated March 6, 2002. In this statement, Renville testified that when the officer notified her of Sorenson's death, her adult daughter, who was living with her at the time, began to scream and cry and she began to scream and

6

cry and her body shook. She stated that while she had been taking Valium for approximately fifteen years (since her brother's death), she was required to take several additional pills during the time between Sorenson's death and his funeral. She also testified that her need for Valium has increased "a little at times" since Sorenson's death but that "sometimes [it is] the same as it was before." She indicated that she took anti-depressants for about two weeks after his death but stopped taking them because she did not like to take pills. Renville further related that over the months after Sorenson's death, unexpected memories would trigger tears. She claimed that some of her children have commented that she seems depressed, "not all of the time, only when [Sorenson is] brought up." She has not sought counseling, nor has it been suggested by friends or family that she do so. She explained, when asked why she did not seek professional help, "I don't know. Talk to my family. You've got to comfort each other. There's nothing you can do about it. Life goes on, but you still miss the person, especially when they're close to you." She further concluded that she has "to learn to deal with it, and that's that."

¶15    While we sympathize with Renville for her loss, our review of her testimony does not lead us to conclude that her emotional distress is so severe that it rises to the level of a compensable claim. There was no indication of any physical manifestation of grief; no counseling has been sought or recommended; Renville chose not to take anti-depressants; her use of Valium has not dramatically increased; she does not have continuous nights of sleeplessness or days without appetite; and she maintains close relationships with family members and friends. The loss of or serious injury to a child, whether an adult or a minor,

7

is no doubt a traumatic experience, but it is one experienced by countless parents every year. And while we believe that under some circumstances the resulting distress may be "so severe that no reasonable person could be expected to endure it," *Sacco*, 271 Mont. at 234, 896 P.2d at 426, that is not the case here. In fact, Renville's recognition that "life goes on" and that it is a loss she must "learn to deal with" reveals a philosophical strength that would likely be absent in a case of severe emotional distress.

¶16     We also conclude that it was appropriate for the District Court to resolve this issue on summary judgment. As we explained in *Sacco,* "It is for the court to determine whether on the evidence severe [serious] emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." *Sacco*, 271 Mont. at 233, 896 P.2d at 425, *(quoting Restatement (Second) of Torts*, § 46, comment j at 78.) In the case before us, the District Court concluded that on the evidence presented, severe emotional distress could not be found. Based upon our review, we agree and affirm the District Court's Order granting summary judgment in favor of the Estate on Renville's negligent infliction of emotional distress claim.

¶17     In addition to her NIED cause of action, Renville sought damages for loss of consortium for the death of Sorenson. She argued that while this Court has not yet recognized the right of parents to recover for the loss of consortium of an adult child, a U.S. District Court in Montana (hereinafter the "federal court") in *Bear Medicine v. U.S.*, (D. MT 2002) 192 F.Supp.2d 1053 (discussed below), has recently held that such recovery should be allowed. Frederickson counters that we are not constrained to follow the federal court.

8

In its briefs to this Court, the Estate instead urged us to follow other jurisdictions that have declined to recognize such a cause of action.

¶18 The District Court concluded that Renville's "loss of consortium claim fails because Montana does not recognize a loss of consortium claim for the death of an adult child." The court continued that "[t]here is no case law in Montana directly addressing whether parents can recover for the loss of consortium of an adult child." The court thereafter expressly declined to expand the law to allow such a cause of action.

¶19 In its Petition for Rehearing, the Estate pointed out that a loss of consortium damage claim arising from a negligently-inflicted death is an inextricable element of a wrongful death action that may be brought only by the personal representative of the decedent under § 27-1-513, MCA. Renville responds that a cause of action for loss of consortium is not synonymous with a cause of action for wrongful death.

¶20    The relevant part of § 27-1-513, MCA (2001), states:

> When injuries to and the death of one person are caused by the wrongful act
> or neglect of another, the personal representative of the decedent's estate may
> maintain an action for damages against the person causing the death . . . .

¶21    This statute and its predecessor have been interpreted to mean that only *one* wrongful death action arising out of an adult's wrongful death may be brought and the decedent's personal representative is the only person who may bring such an action. *State v. District Court* (1961), 139 Mont. 367, 370, 364 P.2d 739, 741. ("The [statute] specifically provides that there can be but *one action for a wrongful death* and that such action must be prosecuted and maintained by the *personal representative . . . .*" (Emphasis in original)). The personal representative holds the proceeds of any damage award for the heirs of the decedent and the award does not become part of the decedent's estate.

¶22    Additionally, under § 27-1-323, MCA, which states, "[i]n every action under 27-1-513, such damages may be given as under all the circumstances of the case may be just," we have held that loss of consortium and loss of comfort and society damages are examples of "just" damages available in wrongful death actions. *Payne v. Eighth Judicial Dist. Court*, 2002 MT 313, ¶ 11, 313 Mont. 118, ¶ 11, 60 P.3d 469, ¶ 11. As indicated above, Sorenson's son, Jason, as Personal Representative, successfully prosecuted a wrongful death action on behalf of himself and Sorenson's other heirs. He pressed no claim, however, for Renville.

¶23    The District Court determined, and Renville did not appeal nor dispute, that she did not have standing to bring a wrongful death action under § 27-1-513, MCA, as she was neither Sorenson's heir nor his personal representative. It was on this ground that the District

10

Court should have determined that Renville's claim for loss of consortium damages failed as a matter of law.

¶24 Allowing a separate loss of consortium action by someone other than a personal representative would create a multiplicity of lawsuits arising from the same wrongful death. Such multiple actions are in contravention of legislative intent. Prior to 1987, in applicable cases, both a "survivor" action and a "wrongful death" action could be brought for a single negligently-inflicted death. Section 27-1-501, MCA (1985) and § 27-1-513, MCA (1985). In 1987, the legislature determined that in those situations where both causes of actions were applicable, to prevent multiple lawsuits arising from the same death, the personal representative must bring both actions together. Furthermore, the legislature expressly stated that any element of damages available under these actions could be recovered only once. Section 27-1-501, MCA (1989).

¶25 A cause of action for wrongful death is a legislative creation. The legislature defines who may bring such actions, when they may be brought, and what damages may be sought. It is this Court's role to construe and interpret the law, not modify legislative enactments.

¶26 Again, as noted above, the parties did not appeal, argue or present this issue in their original briefs to the Court in *Renville I*; thus, we limited our review to the issues presented. However, upon recognizing as a result of the argument presented in Frederickson's Rehearing brief on reconsideration, that our holding improperly expanded the rights available under the applicable statute, we are bound to affirm the District Court's correct ruling. As for the District Court's erroneous reason for reaching this correct decision, we have

11

frequently affirmed a correct conclusion drawn by a District Court even when that conclusion may have been arrived at for the wrong reason. *See Wolfe v. Webb* (1992), 251 Mont. 217, 234, 824 P.2d 240, 250. This rule applies to the case at bar as well.

¶27 For the foregoing reasons, we affirm the District Court's Order granting summary judgment in favor of the Estate on Renville's NIED and loss of consortium claims.

/S/ PATRICIA O. COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE