No. 03-753

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 60

BITTERROOT RIVER PROTECTIVE ASSOCIATION, INC.,

        Petitioner, Respondent and Cross-Appellant,

    v.

KENNETH F. and JUDITH A. SIEBEL and
THE MONTANA DEPARTMENT OF NATURAL
RESOURCES AND CONSERVATION,

        Respondents and Appellants.

APPEAL FROM:    District Court of the First Judicial District,
In and for the County of Lewis and Clark, Cause No. BDV 2002-519,
The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

    For Appellant Montana Department of Natural Resources & Conservation:

        Anne W. Yates (argued), Special Assistant Attorney General, Helena, Montana

    For Appellants Kenneth F. and Judith A. Siebel:

        John Bloomquist (argued), Tom E. Davis, Doney, Crowley, Bloomquist & Uda, P.C., Helena, Montana

    For Respondent Bitterroot River Protective Association, Inc.:

        Jack R. Tuholske (argued), Sarah K. McMillan, Tuholske Law Office, P.C., Missoula, Montana

        David J. Ryan, Ryan Law Offices, P.L.L.C., Missoula, Montana

            Argued:  June 23, 2004
            Submitted:  June 29, 2004
            Decided:  March 9, 2005

Filed:



                    Clerk

Justice John Warner delivered the Opinion of the Court.

¶1    Kenneth F. and Judith A. Siebel ( "Siebels") and the Montana Department of Natural Resources and Conservation ("DNRC") appeal from an Order on Petition for Judicial Review entered on August 4, 2003, in the District Court for the First Judicial District, Lewis and Clark County.  Such order denied the Siebels' applications for beneficial water use permits and held in favor of the Bitterroot River Protective Association ("BRPA").  The BRPA cross-appeals from the same judgment and order on separate grounds.  We affirm.

¶2     We determine that the first issue presented is dispositive and thus address only the following issue on appeal:

¶3    Did the District Court err in concluding that the Siebels' original applications for beneficial water  use  were "strawmen" or "sham" applications, and the proposed amendments to those applications constituted new applications which must be denied as the Bitterroot River subbasin was closed when they were filed?

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶4    The Siebels submitted four applications to appropriate water in the Bitterroot River Basin in Ravalli County on March 19, 1999.  This filing was 10 days before the legislature closed the Bitterroot River subbasin to new water appropriations on March 29, 1999. Sections 1, 3, Ch. 205, L. 1999 (codified at § 85-2-344(2), MCA).

¶5    The Siebels own a large ranch known as the Bitterroot Springs Ranch and filed these applications to appropriate water to develop four ponds–the North Pond, Southeast Pond, Vetsch Pond and Triple Pond–for the beneficial use of wildlife.  At the request of the Siebels' consultant, Land and Water, Inc. ("Land and Water"), the DNRC delayed

2

processing the applications.

¶6 On March 24, 2000, the Siebels amended the application for the North Pond. The amendment requested permission to appropriate more than double the volume of water requested in the original application, documented a change in the place of use, and added recreation as a beneficial use.

¶7 On June 15, 2000, the DNRC wrote to Siebels' Land and Water consultant, Karl Uhlig ("Uhlig"), informing him of deficiencies in the amended North Pond permit application and requesting additional justification for the volume and flow rate needed to support the stated beneficial uses. The letter said such information had to be received within 30 days of receipt of the letter or the Siebels could lose their priority date for the North Pond application.

¶8 The Siebels submitted amendments to the remaining three applications on June 23, 2000. The Siebels' amended Southeast Pond application requested a volume increase from 28.8 acre-feet to 952.66 acre-feet. The Siebels also changed the point of diversion, the place of use, the means of diversion, and added fish and recreation as beneficial uses.

¶9 The amended application for the Triple Pond increased the requested volume from 74.8 acre-feet to 1,025.2 acre-feet, increased the proposed depth of the pond from 3 to 25-30 feet and added fish and recreation as beneficial uses.

¶10 The amended application for the Vetsch Pond requested an increase in volume from 45.6 acre-feet to 899.3 acre-feet, changed the means and place of diversion, and added fish and recreation as beneficial uses.

¶11 On July 7, 2000, the Siebels responded to the DNRC's letter of June 15, stating they

3

needed more time to gather the requested information and that they would respond by the end of August. On July 10, 2000, the DNRC sent another letter to Uhlig, at Land and Water, stating all of the applications were deficient in that the volume and flow rate for the requested beneficial uses required further justification. The DNRC indicated the applications would be denied if the requested information was not provided by August 31, 2000.

¶12 On September 28, 2000, Uhlig responded to the DNRC's letters. On October 13, 2000, the DNRC sent another letter to Uhlig informing him the applications were still incomplete and were lacking justification for the proposed volume and flow. On October 19, 2000, the DNRC again requested additional information from Uhlig, giving him 30 days to respond. Again the DNRC stated the applications would be denied if the information was not timely provided. On October 27, 2000, the Siebels provided the DNRC with the requested information.

¶13 Thereafter, the DNRC published Notice of Application and accepted objections from the public on the Siebels' applications. The BRPA objected to the applications on the grounds that the Siebels had failed to satisfy the beneficial use requirements. The Montana Department of Fish, Wildlife and Parks, the U.S. Fish and Wildlife Service, and local resident, Jim Johnston, also objected. The DNRC scheduled a contested case hearing for November 27, 2001.

¶14 Prior to the hearing, all of the objectors except the BRPA stipulated that they would withdraw their objections if the Siebels would agree to reduce the amount of water requested for each pond. The Siebels reduced the amount of water requested for the Southeast Pond to 331.20 acre-feet, reduced the amount for the Triple Pond to 812.7 acre-feet, reduced the

4

amount for the Vetsch Pond to 342.50 acre-feet, and reduced the amount for the North Pond to 1364.90 acre-feet.

¶15 Also prior to the hearing, the BRPA filed a Motion to Terminate the Applications, alleging the amendments were submitted in bad faith, the amended applications were new applications, and the alleged deficiencies in the applications were not cured within the time allowed by statute. The Hearing Examiner denied the Motion and denied a subsequent request to certify the Motion to the DNRC Director.

¶16 The Hearing Examiner concluded the Siebels had not proven that the quantity of water requested was the minimum amount necessary for the proposed beneficial use; had not provided evidence to establish a direct correlation between the amount of water requested and the need for that amount of water to sustain the proposed beneficial uses of fish, wildlife and recreation; and had not proven the proposed use was a beneficial use for which a water right could be granted. Accordingly, on March 6, 2002, the Hearing Examiner denied the Siebels' applications.

¶17 The Siebels filed exceptions to the Hearing Examiner's decision. Oral argument was held on May 8, 2002, and the DNRC issued its Final Order on July 29, 2002, reversing the decision of the Hearing Examiner and granting all four of the Siebels' applications. The DNRC concluded the Siebels had proven that the amount of water requested was "reasonably necessary" to support the proposed beneficial uses.

¶18 BRPA petitioned the District Court for review. The District Court entered its Order on August 4, 2003, concluding the Siebels had not submitted the original applications in bad faith; holding as a matter of law the DNRC erred in relating the amendments back to the

5

original applications filed before the Bitterroot River subbasin closure because the amendments were so substantial they constituted new applications whose filing was precluded by Bitterroot River subbasin closure; the DNRC erred in applying a "reasonably necessary" standard in determining the amount of water necessary to support the proposed beneficial uses and the appropriate standard is the "minimum amount necessary"; and the DNRC did not err in allowing the amendments to the applications.

¶19 The Siebels filed a Notice of Appeal on October 3, 2003, and the DNRC filed its appeal on October 7, 2003. On October 17, 2003, the BRPA filed its cross-appeal. The Siebels and the DNRC appeal the District Court's conclusions that the DNRC erred in accepting and processing the amended applications after the Bitterroot River subbasin closure and that the DNRC incorrectly applied the "reasonably necessary" standard instead of the "minimum amount necessary" standard in determining the amount of water required to support the proposed beneficial uses. The BRPA cross-appeals the District Court's conclusion that the original applications were not submitted in bad faith and that DNRC did not err in not terminating the applications pursuant to its authority under § 85-2-302, MCA.

¶20 The decision in this case only requires that we address the issue of whether the amended applications were so substantial that they constituted new applications whose filing was subsequent to the time the Bitterroot River subbasin was closed to new appropriations, and thus the new applications must be denied. The further issues presented by the parties are questions that may or may not have to be answered another day. However, we do not issue advisory opinions. *Northfield Ins. Co. v. Mont. Ass'n of Counties*, 2000 MT 256, ¶ 18, 301 Mont. 472, ¶ 18, 10 P.3d 813, ¶ 18; *Bresindine v. Dept. of Commerce* (1992), 253 Mont.

6

361, 365, 833 P.2d 1019, 1021.

## II. STANDARD OF REVIEW

¶21 A district court reviews an administrative decision in a contested case to determine whether the findings of fact are clearly erroneous in view of the reliable, probative and substantial evidence in the whole record and whether the agency correctly applied the law. *See* § 2-4-704, MCA; *Baldwin v. Board of Chiropractors,* 2003 MT 306, ¶ 10, 318 Mont. 188, ¶ 10, 79 P.3d 810, ¶ 10. We employ the same standards when reviewing a district court order affirming or reversing an administrative decision. *Baldwin,* ¶ 10, (citation omitted).

## III. DISCUSSION

### ISSUE

¶22 **Did the District Court err in concluding that the Siebels' original applications for beneficial water use were "strawmen" or "sham" applications, and the proposed amendments to those applications constituted new applications, which must be denied as the Bitterroot River subbasin was closed when they were filed?**

¶23 The Siebels argue the District Court was in error in classifying the amendments to the Siebels' original applications as new applications because nothing in the plain language of the 1973 Montana Water Use Act prohibits amendments to applications timely filed. According to the Siebels, the only way the District Court could have reached its conclusion was by reading into the Bitterroot River subbasin closure statute, § 85-2-344, MCA, a prohibition on amendments or modifications to timely filed applications which pre-dated the effective date of the statute. In so doing, the Siebels argue that the District Court violated a fundamental rule of statutory construction that the role of the judge in construing a statute is not to insert what has been omitted, or to omit what has been inserted. Section 1-2-101,

7

MCA; *Kadillak v. Anaconda Co.* (1979), 184 Mont. 127, 138, 602 P.2d 147, 154. However, during oral argument, the attorney for the Siebels admitted that nowhere in the District Court record was there any evidence to support this conclusion, therefore, we decline to address the argument on appeal.

¶24     The Siebels and the DNRC next argue that the amendments to the original applications were not so significant as to constitute new applications. According to the Siebels, the change in flow rate and volume that the District Court focused on in making its determination were not significant changes; they merely resulted from a reclassification of the projects from on-stream to off-stream ponds requiring the Siebels to supply additional design calculations to the DNRC not required when they filed the original applications. They argue that the changes were insignificant from a water use perspective because the total volume of water used in an off-stream pond would actually be less than the total volume required for a constant flow on-stream pond. Additionally, the changes in points of diversion, means of diversion and place of use were not significant because, like the updated changes in volume, these changes were necessitated by the reclassification of the projects from on-stream to off-stream ponds. They insist the changes were mere "refinements" to the original applications that more accurately reflected the data required by the DNRC once the design of the projects was complete.

¶25     The Siebels argue that this Court's holdings in *General Agriculture Corp. v. Moore* (1975), 166 Mont. 510, 534 P.2d 859, and *Montana Dept. of Natural Resources and Conservation v. Intake Water Co.* (1977), 171 Mont. 416, 558 P.2d 1110, stand for the proposition that an appropriator of water need not fully develop or completely define the

8

exact elements of a proposed appropriation of water at the time the appropriator evidences their intent to put the water to beneficial use; and so long as the appropriator diligently pursues their right to appropriate the water, the right relates back to the date of original filing. The DNRC joins the Siebels in this argument.

¶26 Based on the undisputed facts of this case, it is readily apparent that the amendments to each of the four applications were much more than mere "refinements" which did not constitute significant changes to the applications as originally filed. We conclude, as did the District Court, that the changes were so significant that the amended applications bear little resemblance, if any, to the original applications. The total volume of water requested for all four ponds increased from the original 916 acre feet to 4,677 acre feet in the amended applications. Additionally, each of the amended applications included new beneficial uses and three of the applications made changes to one or more of the following: the means of diversion, points of diversion, or points of use. This Court noted, admittedly in *dicta*, in *Matter of Musselshell River Drainage Area* (1992), 255 Mont. 43, 54, 840 P.2d 577, 584, that changes to the place of diversion and place of use are significant and are indicative of a new appropriation.

¶27 In spite of this precedent and the statutory requirements for completing an application to appropriate water provided in § 85-2-302, MCA, the DNRC contends that the amendments could not constitute new applications because the source of the water for the project was the same; the points of use and diversion changed but remained on the same parcel of real property; the change in design from on-stream to off-stream was legitimate; and no downstream users would be impacted by the changes. We cannot agree.

9

¶28    What the DNRC and Siebels really argue is that original applications to appropriate water only need to indicate that the applicant wants to acquire the right to use some as yet undetermined amount of water, in an undetermined manner, with an undetermined means of diversion, for an undetermined purpose.  To so hold would be directly contrary to the requirement of § 85-2-302, MCA, that "the applicant shall submit a correct and complete application."  In this case, the nature and extent of the changes to the proposed appropriation contained in the amended applications can only be consistent with a new appropriation with a new priority date, which would be prohibited by the Bitterroot River subbasin closure.

¶29    We are not persuaded by the argument that the holdings of *General Agriculture* and *Intake Water* stand for the proposition that an application for permit filed in accordance with § 85-2-302, MCA, must relate back to the priority date of the original application when it is amended by the applicant.  Neither *General Agriculture* or *Intake Water* are apposite in this case.

¶30    In *General Agriculture*, 166 Mont. at 517, 534 P.2d at 863, we held the plaintiff, who filed a notice of appropriation prior to the effective date of both the 1972 Montana Constitution and the 1973 Montana Water Use Act, had an "existing right" under the meaning of Article IX, Section 3(1) of the 1972 Montana Constitution that was not extinguished by enactment of the 1973 Water Use Act, even though the appropriator had not yet perfected that right through actual use.  Those circumstances are different from this case where there is no existing right involved.

¶31    In *Intake Water*, 171 Mont. at 436, 558 P.2d at 1121, we held that under § 89-811, R.C.M. (1947), the pre-1973 statutory requirements for completing an appropriation of

10

water, Intake Water Co. was not required to commence actual on-site excavation of the diversion works to preserve its priority date; it was enough that the company made an ongoing effort in good faith to prosecute construction of the appropriation project for the company's water right to relate back to the date of posting and filing of notice of appropriation pursuant to § 89-812, R.C.M. (1947).

¶32 Nothing in those two cases stands for the right of an appropriator under the 1973 Water Use Act, as amended, to claim that a substantially changed application relates back to the priority date of the original application. To suggest otherwise demonstrates a general lack of understanding of the differences between pre-1973 and post-1973 statutory law.

¶33 Under the pre-1973 legal framework for acquiring water rights in Montana, a valid appropriation could be accomplished by posting and filing a notice of appropriation and then proceeding to divert the water for a beneficial use. Sections 89-810 to 812, R.C.M. (1947); *Intake Water*, 171 Mont. at 430, 558 P.2d at 1118. The process left many of the details of appropriation to be worked out during the excavation and construction phase of the project. For example, other than an affidavit signed by the appropriator, no other proof was required to show what quantity of water was actually required to support its intended beneficial use. *See Intake Water*, 171 Mont. at 419, 558 P.2d at 1112-13.

¶34 The 1973 Water Use Act fundamentally changed the process for obtaining a new water right by requiring a permit before appropriating water for beneficial use. Section 85-2-302, MCA. The permit process is front-end loaded in that a prospective appropriator must provide detailed information regarding project design in order to meet the rigorous criteria set forth in § 85-2-311, MCA, before obtaining a permit to begin work. Any appropriation

11

undertaken prior to obtaining a permit is illegal under the Act. Section 85-2-302(1), MCA.

¶35 The current permitting system requires a prospective appropriator to gather sufficient information to correctly and completely describe the proposed appropriation before the application is filed and before securing a priority date. A priority date cannot be secured by merely filling out an application, submitting it to the DNRC, and then later designing the diversion, which is what the Siebels attempted to do here. We conclude that the District Court did not err in determining that the original applications, filed March 19, 1999, were so deficient that they were indeed a sham. As such they were insufficient to secure a priority date as provided by § 85-2-302, MCA, and the amendments finally filed on March 24 and June 23, 2000, were new applications.

¶36 Accordingly, we hold that the District Court did not err in concluding the amendments to the original applications were so significant as to constitute new applications the processing of which was prohibited by the Bitterroot River subbasin closure. To hold otherwise would establish a precedent whereby prospective appropriators could file a deficient application, later amend the application without penalty, and thereby gain an advantage over other appropriators, or circumvent other restrictions such as the closure of a subbasin to new appropriations.

## IV. CONCLUSION

¶37 We affirm the judgment of the District Court denying the Siebels' applications for beneficial water use permits.

/S/ JOHN WARNER

12

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JAMES C. NELSON
/S/ JIM RICE
/S/ HOLLY BROWN
District Court Judge Holly Brown
sitting for Justice Leaphart