DA 12-0216

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 187

KIRK WHITE,

        Plaintiff and Appellant,

    v.

STATE OF MONTANA, by and through
MONTANA STATE FUND, DAY &
ASSOCIATES, INC.

        Defendant and Appellee.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV 10-521A
Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Lucas J. Foust; Foust Law Office, P.C.; Bozeman, Montana

        For Appellee:

            W. Anderson Forsythe; Moulton Bellingham PC; Billings, Montana

                Submitted on Briefs:   March 27, 2013

                         Decided:   July 12, 2013

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Kirk White appeals a judgment entered by the Montana Eighteenth Judicial District Court, Gallatin County, dismissing his complaint on the merits and ordering that judgment be entered in favor of the Montana State Fund. We affirm.

¶2 We consider the following issues on appeal:

¶3 *1. Did the District Court err in granting the State Fund's motion to dismiss White's claims under Montana's Insurance Code?*

¶4 *2. Did the District Court err in granting the State Fund's motion for summary judgment regarding White's common law claims?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶5 Kirk White injured his shoulder when he fell through a deck while working at a construction site. White's employer, Trademark Construction, was insured by the Montana State Fund (State Fund). In October 2006, White reported his injury to the State Fund, which processed his workers' compensation claim and assigned it to Ann Boland, a claims examiner. Three days later, the State Fund sent White a letter stating, in part:

> If you receive benefits, you must notify Montana State Fund immediately if you return to any gainful employment. Any receipt of benefits or an attempt to obtain benefits you are not entitled to for this claim, may result in legal action or criminal prosecution.

¶6 In February 2008, the State Fund accepted liability for White's claim after he sought medical treatment. Boland notified White by sending him a letter, which also stated:

2

It's important to keep me updated with your plans for returning to work. If you return to gainful employment without Montana State Fund's knowledge and continue to receive temporary total disability, permanent total disability, or rehab benefits, you may be subject to legal action or criminal prosecution.

The State Fund ultimately paid for White's two shoulder surgeries and made bi-weekly payments of $981.08 in temporary total disability benefits.

¶7　In August of 2008, Boland received an anonymous tip on the State Fund's hotline that White was building and selling furniture out of his home, even though he still was receiving temporary total disability benefits. Boland forwarded the tip to the State Fund's Fraud Detection and Prevention Unit.

¶8　Tom Disburg, a fraud coordinator for the State Fund, previously had received a tip that White was selling furniture out of his home. After Disburg learned that Boland had received a similar tip, he hired Day & Associates, a private investigative firm, to determine whether White was receiving remuneration in addition to the benefits provided by the State Fund.

¶9　Bob Harris, a private investigator for Day & Associates, visited with White outside of White's home and introduced himself under the pseudonym "Dan Snyder." Harris asked how much it would cost for White to make a yard swing similar to the one in White's front yard. White replied he was unsure of the cost; he also showed Harris dressers he was constructing in his garage and various items in his house he had made. Before Harris left, he asked White to write down his number so that he could get in touch about the yard swing. About a month later, Harris called White and asked him to build

him a cedar chest. White told Harris he could build the chest for $650, with half of that amount due up front, and that it would take at least a month to complete because he had other projects to finish. Harris agreed, paid White, and White gave him a hand-written receipt reflecting the terms of the agreement.

¶10 After Harris placed his order, Disburg referred the investigation to the Montana Department of Justice, pursuant to § 39-71-211(1), MCA, and asked that agency to "[p]lease complete the investigation and prepare for possible prosecution." One month later, Harris traveled to White's house to pay for and pick up the cedar chest. Harris was accompanied by Gaylen Buchanan, a State Fund fraud investigator. When they arrived, White showed Harris and Buchanan three cedar chests he had completed, as well as three chests not yet finished; he invited Harris to choose a completed chest. Harris gave White the outstanding $325 and White provided Harris with a formal receipt from a receipt book. After they left with the chest, Buchanan wrote a report that detailed what had happened, which concluded the State Fund's portion of the investigation.

¶11 Based on information provided by the State Fund, the Department of Justice Division of Criminal Investigation (DCI) applied for a warrant to search White's home. Montana First Judicial District Court Judge Dorothy McCarter signed the warrant and three DCI agents, as well as local law enforcement, searched White's home in December 2008. The DCI agents seized a receipt book that reflected sales White had made and other paperwork. These documents established that, while receiving temporary total disability benefits, White sold the chest to Harris for $650, he sold a bench to his physical

4

therapist for $350, and he received a vacuum cleaner worth $899.99 in exchange for working at a vacuum cleaner store.

¶12    The DCI agents provided the fruits of the search to Assistant Attorney General Deborah Butler.  Butler determined that, based on her review of the materials seized by DCI and those provided by the State Fund, probable cause existed to file charges.  First Judicial District Court Judge Kathy Seeley granted Butler's motion to file an information and, on March 3, 2009, Butler filed an information charging White with theft, a felony, in violation of § 45-6-301(5)(b), MCA.  The information stated that White "failed to disclose to the State Fund that while on temporary work restriction, he built and sold furniture and worked in a retail store in exchange for remuneration, while also receiving approximately $2,242 in temporary total disability benefits from [the] State Fund."  White was tried on charges of theft in Lewis and Clark County and a jury found him not guilty in January 2010.

¶13    The State Fund terminated White's temporary total disability benefits shortly after the DCI searched his home.  In March 2010, two months after he was acquitted, White and the State Fund settled White's workers' compensation claim for a lump sum payment of $32,500.

¶14    White filed suit against the State Fund and its private investigators, Day & Associates, in May 2010.  In his amended complaint, White alleged that the defendants violated eight sections of Montana's Insurance Code regarding unfair claim settlement practices.  He also pleaded a variety of common law causes of action, including bad faith,

5

malicious prosecution, negligent infliction of emotional distress, and intentional infliction of emotional distress. The District Court granted the State Fund's motion to dismiss Counts One through Eight of White's complaint for failure to state a claim pursuant to M. R. Civ. P. 12(b)(6), as well as the State Fund's and Day and Associates' motions for summary judgment on the remaining counts in the complaint. White appeals only the District Court's rulings in favor of the State Fund.

## STANDARD OF REVIEW

¶15 We review de novo a district court's ruling on a motion to dismiss for failure to state a claim pursuant to M. R. Civ. P. 12(b)(6). *Ming Da Situ v. Smole*, 2013 MT 33, ¶ 11, 369 Mont. 1, ___ P.3d ___. We accept as true the complaint's factual allegations and, when evaluating the motion, we consider the complaint in the "light most favorable" to the plaintiff. *Tally Bissell Neighbors, Inc. v. Eyrie Shotgun Ranch, LLC.*, 2010 MT 63, ¶ 15, 355 Mont. 387, 228 P.3d 1134. A district court should not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McKinnon v. Western Sugar Coop. Corp.*, 2010 MT 24, ¶ 12, 355 Mont. 120, 225 P.3d 1221. The district court's determination that a complaint failed to state a claim presents a conclusion of law, which we review for correctness. *McKinnon*, ¶ 12.

¶16 We review a district court's ruling on motions for summary judgment de novo, applying the same M. R. Civ. P. 56(c) criteria as applied by the district court. *Turner v. Wells Fargo Bank, N.A.*, 2012 MT 213, ¶ 11, 366 Mont. 285, 291 P.3d 1082 (citing

*Ternes v. State Farm Fire & Cas. Co.*, 2011 MT 156, ¶ 18, 361 Mont. 129, 257 P.3d 352). Summary judgment is appropriate only when the moving party demonstrates both the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Turner*, ¶ 11. A district court's conclusion that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law is a legal conclusion we review for correctness. *Turner*, ¶ 11.

## DISCUSSION

¶17 *Issue One: Did the District Court err in granting the State Fund's motion to dismiss White's claims under Montana's Insurance Code?*

¶18 Counts One through Eight of White's complaint were based on provisions of Montana's Insurance Code contained in § 33-18-201, MCA. The State Fund, in its motion to dismiss, argued that those eight counts failed as a matter of law because Title 33 of the Montana Code Annotated "explicitly does not apply to the State Fund," as stated in § 33-1-102(5), MCA. In his response, White conceded that although "a plain reading of the statute would lead one to believe that [Title 33] does not apply to the Montana State Fund," the legislative history of the statute indicates the Legislature did not intend for that result.

¶19 The District Court rejected White's argument. It concluded that the statutes invoked in White's complaint do not apply to the State Fund because the plain language of § 33-1-102(5), MCA, "clearly excludes the State Fund from application of the Insurance Code[.]" Section 33-1-102(5), MCA, states that "[t]his [Insurance Code] does

7

not apply to workers' compensation insurance programs provided for in Title 39, chapter 71, parts 21 and 23, and related sections," i.e., the Montana State Fund. The District Court noted this Court's holding that "the only interpretation possible given the plain language of" this statute is that "the provisions of Title 33 [do] not apply to workers' compensation cases involving coverage provided by the State Fund." *Heisler v. Hines Motor Co.*, 282 Mont. 270, 278, 937 P.2d 45, 49 (1997).

¶20 On appeal, White argues that the District Court erred by failing to consider the first eight counts of his complaint because "regardless of whether the Montana State Fund was required to comply with Title 33, it still had a duty to comply with the standards set out in 33-18-201, MCA," and failure to do so constituted bad faith. White's argument conflicts with the plain language of § 33-1-102(5), MCA, and with our holding in *Heisler*. White cannot graft the provisions of § 33-18-201, MCA, onto a common-law bad faith claim, which is "an actionable tort *independent of the insurance code*." *Birkenbuel v. Mont. St. Compen. Ins. Fund*, 212 Mont. 139, 143, 687 P.2d 700, 702 (1984) (emphasis added). The Legislature has determined that Montana's Insurance Code should not apply to the State Fund. *See* § 33-1-102(5), MCA; *Heisler*, 282 Mont. at 278, 937 P.2d at 49. The District Court correctly concluded that White's complaint failed to state a claim because there are no facts that White could prove in support of his complaint against the State Fund that would entitle him to relief under § 33-18-201, MCA.

¶21    *Issue Two: Did the District Court err in granting the State Fund's motion for summary judgment regarding White's common law claims?*

¶22    White also appeals the District Court's decision to grant the State Fund's motion for summary judgment regarding his remaining common law claims, including (1) bad faith, (2) malicious prosecution, and (3) negligent and intentional infliction of emotional distress.

### 1.    Bad Faith

¶23    The District Court determined that the State Fund did not act in bad faith when it terminated White's benefits because the "State Fund had a 'reasonable basis for contesting [White's] claim' based on the evidence it had that White had sold at least two products for money and had worked for 'in kind' pay." For that reason, the court determined that the State Fund was entitled to judgment as a matter of law.

¶24    "Under Montana common law, an insurer cannot be held liable for bad faith in denying a claim if the insurer had a reasonable basis for contesting the claim or the amount of the claim." *Palmer by Diacon v. Farmers Ins. Exch.*, 261 Mont. 91, 102, 861 P.2d 895, 901 (1993). We have applied the same principles to the State Fund, ruling that it too may be subject to a common-law bad faith claim if it engages in "tortious conduct occurring outside the employment relationship and during the processing and settlement of a workers' compensation claim." *Birkenbuel*, 212 Mont. at 146, 687 P.2d at 704. An insurance company's "duty to act in good faith with [its] insureds . . . exists independent of the insurance contract and independent of the statute." *Birkenbuel*, 212 Mont. at 143-

9

44, 687 P.2d at 702. White contends that the District Court erred in granting summary judgment because evaluating the reasonableness of an insurer's conduct is a task best left to the jury. He cites *Dean v. Austin Mutual Insurance Company* for the proposition that "reasonableness is generally a question of fact; therefore, it is for the trier of fact to weigh the evidence and judge the credibility of the witnesses in determining whether the insurer had a 'reasonable basis' for denying a claim." *Dean v. Austin Mut. Ins. Co.*, 263 Mont. 386, 389, 869 P.2d 256, 258 (1994). As the State Fund points out, however, *Dean* does not preclude summary judgment in every insurance bad faith case:

> [W]hile the assessment of reasonableness generally is within the province of the jury (or the court acting as fact-finder), *Dean*, 263 Mont. at 389, 869 P.2d at 258, *reasonableness is a question of law* for the court to determine when it depends entirely on interpreting relevant legal precedents and evaluating the insurer's proffered defense under those precedents.

*Redies v. Attys. Liab. Prot. Soc'y*, 2007 MT 9, ¶ 35, 335 Mont. 233, 150 P.3d 930 (emphasis added).

¶25 White acknowledges that the Unfair Claims Settlement Practices Act is a codification of the common law on bad faith. The common law imposed a duty on an insurer not to deny coverage or benefits without a reasonable basis for doing so. *Palmer*; *Tynes v. Bankers Life Co.*, 224 Mont. 350, 364, 730 P.2d 1115, 1124 (1986). We restated in *Palmer* that "'[i]t is generally held that an insurer is entitled to challenge a claim on the basis of debatable law or facts and will not be liable for bad faith or punitive damages for denying coverage if its position is not wholly unreasonable.'" *Palmer*, 261 Mont. at 102, 861 P.2d at 902 (quoting *Safeco Ins. Co. v. Ellinghouse*, 223 Mont. 239, 248, 725 P.2d

10

217, 223 (1986)). White's allegation of unfair practices against the State Fund arose from (1) its termination of White's benefits and (2) its prosecution of him for workers' compensation fraud. The latter allegation was cast in the form of common law claims for malicious prosecution and abuse of process.[1]

¶26 White argues that the District Court erred by ignoring his allegations of deception and entrapment by the State Fund in evaluating his common law bad faith claim. The "essence" of an insurance bad faith claim is "failure to deal fairly and in good faith with an insured." *Ellinghouse*, 223 Mont. at 251, 725 P.2d at 225. White does not contend, however, that he would have a common law bad faith claim if the State Fund had not terminated his benefits. Nor does the Dissent identify authority for the position that White's allegations establish a common law claim for bad faith independent of the denial of benefits. Dissent, ¶¶ 4-5. Thus, as the District Court properly recognized, a reasonable basis for terminating White's benefits is fatal to his common law bad faith claim. In this regard, the District Court correctly observed that the material facts were undisputed: White has never disputed that he sold a cedar chest to Harris, that he sold a bench to his physical therapist, and that he received a vacuum cleaner in exchange for his labor—all while receiving temporary total disability benefits.

¶27 The State Fund's decision to terminate White's benefits was based on its conclusion that White was violating Montana law by receiving wages and disability benefits at the same time. *See* §§ 39-71-701(7), MCA (a worker "may not receive both

---

[1] White does not contest the District's dismissal of his abuse of process claim. We address the malicious prosecution claim below.

11

wages and temporary total disability benefits without the written consent of the insurer"); 39-71-123(1), MCA ("[w]ages include the cash value of all remuneration paid in any medium other than cash"); and 39-71-123(1)(d), MCA (wages include all "income or payment . . . taken by a sole proprietor").

¶28 Given the "basis in law" upon which the State Fund terminated White's benefits and the undisputed facts of the case, it was appropriate for the District Court to determine whether the State Fund's termination of White's benefits was reasonable as a matter of law. *Watters v. Guaranty Nat'l Ins. Co.*, 2000 MT 150, ¶¶ 69-72, 300 Mont. 91, 3 P.3d 626 (holding that the reasonableness of an insurer's conduct is appropriate for resolution on summary judgment when the "basis in law" for the insurer's decision to terminate benefits is "grounded on a legal conclusion, and no issues of fact remain in dispute") (overruled on other grounds by *Shilhanek v. D-2 Trucking*, 2003 MT 122, ¶ 21, 315 Mont. 519, 70 P.3d 721). The court correctly concluded that the State Fund could not "be held liable for bad faith in denying a claim if [it] had a reasonable basis for contesting the claim[.]" *Palmer*, 261 Mont. at 102, 861 P.2d at 901.

¶29 We agree with the District Court that the State Fund had a reasonable basis in law to terminate White's benefits after learning that he also received wages for services rendered, in violation of § 39-71-701(7), MCA. The statutory language plainly proscribes receipt of "both wages and temporary total disability benefits" and defines "wages" broadly, with no exceptions for minimal or occasional payments. It is not the

12

province of this Court to determine that White's remuneration was not substantial enough to trigger termination of benefits. Section 1-2-101, MCA.

¶30 White also alleges that, because a jury heard similar evidence during his criminal trial and found him not guilty of theft, the District Court erred in granting the State Fund's summary judgment motion on his bad faith claim. He especially objects to the fact that the court cited Harris's and Disburg's testimony from the criminal trial, which White argues is "suspect" in light of his acquittal. Before the District Court, however, White did not dispute that he had received cash and "in kind" payments in exchange for services rendered. Consequently, he failed to satisfy his burden of "set[ting] out specific facts showing a genuine issue for trial." M. R. Civ. P. 56(e)(2); *see also Ternes*, ¶ 18 (once the moving party establishes both the absence of genuine issues of material fact and entitlement to judgment as a matter of law, the party opposing summary judgment "must present substantial evidence, as opposed to mere denial, speculation, or conclusory statements, raising a genuine issue of material fact"). That White was found not guilty of theft is irrelevant to his civil case; the jury in the criminal trial was not asked to determine whether the State Fund's decision to terminate White's benefits had a reasonable basis in law.

### 2. Malicious Prosecution

¶31 In his amended complaint, White alleged that the State Fund engaged in malicious prosecution when its fraud detection unit referred White's case to the Department of

13

Justice for possible criminal prosecution. In a civil action for malicious prosecution, the plaintiff bears the burden of proving each of the following elements:

(1) a judicial proceeding was commenced and prosecuted against the plaintiff;

(2) the defendant was responsible for instigating, prosecuting or continuing such proceeding;

(3) there was a lack of probable cause for the defendant's acts;

(4) the defendant was actuated by malice;

(5) the judicial proceeding terminated favorably for the plaintiff; and

(6) the plaintiff suffered damage.

*Hughes v. Lynch*, 2007 MT 177, ¶ 12, 338 Mont. 214, 164 P.3d 913.

¶32 Malicious prosecution claims are "not favored by the law and the burden on the plaintiff is heavy." *Reece v. Pierce Flooring*, 194 Mont. 91, 100, 634 P.2d 640, 645-46 (1981). If the plaintiff cannot prove each of the required elements by prima facie evidence, "judgment as a matter of law may be entered for the defendant." *Plouffe v. Mont. Dep't of Health & Human Servs.*, 2002 MT 64, ¶ 16, 309 Mont. 184, 45 P.3d 10.

¶33 The District Court concluded that "the undisputed facts show that the Department of Justice, not the State Fund, instigated the criminal proceeding" against White and that, even if the State Fund had instigated the prosecution, "it would have had probable cause to do so." Because White could not prove the second or third elements of malicious prosecution, the court granted the State Fund's motion for summary judgment. On appeal, White argues that the State Fund instigated the criminal proceedings by actively

14

building a case against him and by using private investigators to "bait him into selling a piece of furniture."

¶34 The State Fund is required by law to "establish a fraud prevention and detection unit[,]" which is "responsible for developing detection and prevention procedures[.]" Section 39-71-211, MCA. The fraud prevention and detection unit also is required to "refer all cases of suspected fraudulent conduct to the workers' compensation fraud investigation and prosecution office" in the Department of Justice. Section 39-71-211, MCA; *see also* § 2-15-2015, MCA. When the State Fund referred White's case to the Department of Justice for possible prosecution, it was acting pursuant to statutory duty. When a defendant acts upon a statutory duty and provides information to the proper authorities, who then file criminal charges, that defendant is not liable for "instigating" criminal proceedings. *Vehrs v. Piquette*, 210 Mont. 386, 391, 684 P.2d 476, 478 (1984) (holding that "[d]efendants cannot be held accountable in civil liability for carrying out [their] official duty within the authority and means prescribed by law"); *see also Sherner v. Nat'l Loss Control Servs. Corp.*, 2005 MT 284, ¶¶ 36-38, 43, 329 Mont. 247, 124 P.3d 150.

¶35 Assistant Attorney General Deborah Butler's decision to file theft charges against White was made independent of the State Fund, even though Butler's decision was based in part on information the State Fund provided to the Department of Justice pursuant to §§ 39-71-211 and 2-15-2015, MCA. The act of "providing information to authorities without more is not actionable" in a malicious prosecution claim. *Vehrs*, 210 Mont. at

15

391, 684 P.2d at 478. For those reasons, the District Court correctly concluded that the State Fund did not "instigate" the criminal proceedings against White.

¶36 Similarly, the District Court correctly concluded that White had not shown lack of probable cause for the State Fund's acts. We have defined probable cause for prosecution as "reasonable grounds for suspicion, supported by circumstances reasonably strong in themselves to warrant a reasonably prudent and cautious [person] to believe that the accused is guilty of the offense charged." *Plouffe*, ¶ 18 (quoting *Reece*, 194 Mont. at 98, 634 P.2d at 643). Although generally a jury question, "the determination of probable cause becomes a question of law for a court to decide when there is no conflict of evidence and the evidence 'admits only one conclusion.'" *Blacktail Mtn. Ranch Co. v. State*, 2009 MT 345, ¶ 11, 353 Mont. 149, 220 P.3d 388 (quoting *Plouffe*, ¶ 18).

¶37 White acknowledges that Judge Seeley approved the filing of a criminal information on the basis of her finding that the State had probable cause to charge White with theft in violation of § 45-6-301(5)(b), MCA. A judicial determination of probable cause to hold a party answerable to criminal charges "is considered prima facie or presumptive evidence of the existence of probable cause" and a plaintiff in a malicious prosecution action can overcome this presumption only "by showing by a preponderance of the evidence that there was no probable cause for filing the original criminal action." *Watkins v. Spring Creek Colony*, 188 Mont. 467, 469-71, 614 P.2d 508, 510-11 (1980). A preponderance of the evidence is evidence showing that a claim is "more probably true

16

than not." *Bostwick Props. v. Mont. Dep't of Nat'l Res. & Conserv.*, 2009 MT 181, ¶ 33, 351 Mont. 26, 208 P.3d 868.

¶38 White does not present any evidence disputing Judge Seeley's finding, but instead offers a conclusory statement that "[her] finding of probable cause . . . was invalid." On the contrary, the uncontroverted evidence before the District Court established that, while receiving temporary total disability benefits, White sold a cedar chest and a bench for cash payments, and he received a vacuum cleaner in exchange for services rendered. This undisputed evidence admits only one conclusion—that White was receiving both wages and temporary total disability benefits in violation of § 39-71-701(7), MCA. As a matter of law, this constituted probable cause for the State Fund's actions. *See Blacktail Mtn. Ranch Co.*, ¶ 12. White has not overcome the presumption that there was probable cause for the criminal charges filed against him. As the District Court observed, the State Fund acted lawfully when it reported White's suspected fraud to the Department of Justice; its actions were supported by probable cause.

¶39 Because White could not satisfy the second or third elements of a malicious prosecution claim, the District Court correctly concluded that the State Fund was entitled to judgment as a matter of law.

### 3. Emotional Distress

¶40 In his first amended complaint, White alleged that the State Fund negligently and intentionally inflicted emotional distress on him when it terminated his temporary total disability benefits. In his response to the State Fund's motion for summary judgment,

White alleged that he suffered severe emotional distress when he "was forced to go through the indignity of being called a thief and plead his case before a jury of his peers."[2] The District Court granted the State Fund's summary judgment motion because it concluded that White had neither alleged nor established the severe emotional distress required by *Sacco v. High Country Independent Press*, 271 Mont. 209, 233-34, 896 P.2d 411, 425-26 (1995). On appeal, White contends that "[o]nce again, the District Court made a finding better left to a jury."

¶41 Under Montana law, a plaintiff's independent claim for either negligent or intentional infliction of emotional distress can be maintained "only upon a showing that the plaintiff suffered 'serious' or 'severe' emotional distress as the reasonably foreseeable consequence of the defendant's act or omission." *Feller v. First Interstate Bancsystem, Inc.*, 2013 MT 90, ¶ 34, 369 Mont. 444, 299 P.3d 338 (citing *Sacco*, 271 Mont. at 237, 896 P.2d at 428). For emotional distress to be considered serious or severe, it must be "so severe [that] no reasonable person could be expected to endure it." *Feller*, ¶ 34 (quoting *Sacco*, 271 Mont. at 234, 896 P.2d at 426).

¶42 White's contention that a jury must be allowed to determine whether or not he suffered serious or severe emotional distress is an incomplete legal statement. "It is for the *court* to determine whether on the evidence severe or serious emotional distress can

_____

[2] On appeal, White also alleges that he was "humiliated, embarrassed, angered, [and] even suffered . . . diarrhea for days before his trial." White failed to set out these specific facts "by affidavits or as otherwise provided" when contesting the State Fund's motion for summary judgment as required by M. R. Civ. P. 56(e)(2). *Malpeli v. State*, 2012 MT 181, ¶ 12, 366 Mont. 69, 285 P.3d 509. We decline to consider allegations that have no factual basis in the District Court record. *Bitterroot River Protective Ass'n, Inc., v. Siebel*, 2005 MT 60, ¶ 23, 326 Mont. 241, 108 P.3d 518.

be found;" it is for the jury to determine whether the plaintiff has in fact established serious or severe emotional distress. *Sacco*, 271 Mont. at 239, 896 P.2d at 429 (emphasis added).

¶43 We have agreed that summary judgment is appropriate for disposing of an emotional distress claim that lacks sufficient evidentiary support. *Renville v. Fredrickson*, 2004 MT 324, ¶¶ 4-7, 16, 324 Mont. 86, 101 P.3d 773. We noted in *Renville* that the plaintiff, whose son was killed as a result of the defendant's conduct, presented "no indication of any physical manifestation of grief; no counseling [had] been sought or recommended; [she] chose not to take anti-depressants;" and countless parents grieve their child's death every year. *Renville*, ¶ 15. Similarly, when a plaintiff alleged that she "agonized over her credit reputation, she had anxiety attacks, severe headaches, shoulder pain, bathroom difficulties, sleeplessness, overeating from stress," but did not present any evidence supporting her claims, we agreed that her emotional distress claim should be dismissed on summary judgment. *Feller*, ¶¶ 39-41.

¶44 The District Court correctly concluded that severe or serious emotional distress could not be found on the facts White alleged. White has not supported his emotional distress claims with any evidence. Although he was compelled to defend himself against criminal charges, every year many Montanans are forced to mount a criminal defense. We decline White's invitation to hold that a criminal trial, standing alone, causes emotional distress "so severe [that] no reasonable person could be expected to endure it." *Feller*, ¶ 34 (quoting *Sacco*, 271 Mont. at 234, 896 P.2d at 426). Furthermore, White

19

admitted that he had not sought mental health counseling for emotional distress, he had not taken any medication to treat emotional distress, and he was able to pursue his hobbies while his criminal charges were pending. These facts indicate a "philosophical strength that would likely be absent in a case of severe emotional distress." *Renville*, ¶ 15. Based on our review of the record, we agree with the District Court that serious or severe emotional distress could not be found on the facts White presented and it was appropriate for the court to dismiss these claims on summary judgment. *See Renville*, ¶ 16; *see also Sacco*, 271 Mont. at 239, 896 P.2d at 429.

¶45 For the foregoing reasons, we affirm the District Court's entry of judgment in favor of the State Fund.

¶46 Affirmed.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ BRIAN MORRIS
/S/ JIM RICE

Justice Patricia O. Cotter concurs and dissents.

¶47 I concur in the Court's disposition of Issue One, and concur in part but dissent in part with respect to the Court's resolution of Issue Two. I would reverse and remand for trial White's claim of common-law bad faith and his request for parasitic emotional distress damages arising out of that tort.

20

¶48 I begin my analysis with a review of the District Court's order of summary judgment in favor of State Fund on White's claim for common-law bad faith. In its order, the District Court states that White has failed to set forth what actions he claims constitute common-law bad faith, and concludes that his claim must be premised upon State Fund's decision to terminate benefits. I respectfully disagree with this conclusion.

¶49 White's First Amended Complaint was comprised of fifteen counts. The complaint contained preliminary allegations with respect to jurisdiction, venue, and "Facts Common to All Counts." The latter portion of the complaint described in detail the surveillance conducted by State Fund, the request by the undercover investigator that White build him a cedar chest, and the fact that White was ultimately prosecuted criminally but acquitted of the charges against him. The complaint then proceeded with the first eight counts of the complaint, which were premised upon claims that State Fund violated varying provisions of Montana's Insurance Code. In those counts, White alleged that State Fund bullied him and engaged in fraud, deception, and entrapment when terminating his benefits and subjecting him to prosecution.

¶50 Count Nine of the First Amended Complaint is entitled "Common Law Bad Faith." The first sentence of that count states: "Plaintiff re-pleads all paragraphs set forth in this Complaint as if fully set forth herein." White alleges in Count Nine that the defendant engaged in common-law bad faith by failing to act in good faith and fair dealing, and asserts that the defendant's actions which constitute bad faith "are more fully set forth in the preceding allegations." He argues that as a direct and proximate cause of

21

the defendant's behavior, he has suffered and continues to suffer emotional and financial loss. White's complaint put State Fund on clear notice that he was challenging the good faith of State Fund's program of surveillance and ostensible entrapment. The District Court ignored these allegations set forth in the complaint when it held that White had failed to specify what acts on the part of State Fund constituted bad faith.

¶51 This Court likewise errs when it concludes that White's common-law bad faith claims must fail because State Fund had a reasonable basis in law for terminating White's benefits. The Court infers that the termination of White's benefits is the *sine qua non* of his common law bad faith action. Opinion, ¶ 26. However, this contention is belied by the very authorities set forth in ¶ 24 of the Court's Opinion, where the Court concedes that "[a]n insurance company's 'duty to act in good faith with [its] insureds . . . exists independent of the insurance contract and independent of statute;' " and that a claim for bad faith may arise if the insurer engages in "tortious conduct . . . during the processing and settlement of a workers' compensation claim."

¶52 As the Court further correctly notes, whether an insurer's conduct is reasonable is a task best left to the jury. Opinion, ¶ 24. The Court errs, however, when it concludes that it was appropriate for the District Court to determine whether State Fund's actions were reasonable as a matter of law. Opinion, ¶ 26. To the contrary, White set forth specific facts in support of his claim of bad faith, and raises a genuine issue as to whether State Fund's conduct was tortious. *Birkenbuel v. Mont. St. Compen. Ins. Fund*, 212 Mont. 139, 143-44, 687 P.2d 700, 702 (1984). I would therefore conclude that the

22

question of whether an insurer's program of surveillance and ostensible entrapment is reasonable is a question of fact best left to the jury.

¶53 Because I would remand with instructions that White be permitted to proceed to trial on his common-law bad faith claim, I address the issue of damages. White alleged throughout his complaint that he has suffered and will continue to suffer emotional distress as a result of the actions of State Fund. In entering summary judgment against White on his claims for emotional distress, the District Court acknowledged White's argument that emotional distress need not be "severe" in order to qualify as an element of damages for a tort such as bad faith. The court stated in its order of summary judgment: "That may be true, but that is not the State Fund's motion. State Fund moved to dismiss the 'stand alone' torts of negligent or intentional infliction of emotional distress." The District Court was correct in this regard. State Fund moved only to dismiss the stand-alone claims; it did not seek to dismiss a claim of parasitic damages for emotional distress arising out of a tort. Likely, the District Court did not further address White's claims for parasitic emotional distress because it concluded that none of White's tort claims could survive dismissal or summary judgment.

¶54 This Court upholds the dismissal of plaintiff's stand-alone claims for negligent or intentional infliction of emotional distress. I agree with this decision. However, because I would remand the common-law bad faith claim for trial, I would also allow White to press his claim for parasitic emotional distress arising out of the tort. As we stated in *Jacobsen v. Allstate Ins. Co.*, 2009 MT 248, ¶ 66, 351 Mont. 464, 215 P.3d 649, "the

23

'serious or severe' standard announced in *Sacco* applies only to independent claims of negligent or intentional infliction of emotional distress. . . . As for emotional distress that is claimed as an element of damage for an underlying tort claim, . . . we hereby explicitly adopt the standard set forth in the Montana Pattern Jury Instruction," which states that "[t]he law does not set a definite standard by which to calculate compensation for mental and emotional suffering and distress." White's claims for parasitic emotional distress arising from his common law bad faith claim should be considered by a jury.

¶55 I therefore would reverse and remand for trial White's claim for common-law bad faith and his request for damages for mental and emotional distress arising from the tort. I dissent from our refusal to do so. I otherwise concur in the Court's Opinion.


/S/ PATRICIA COTTER