Kathleen ADAMS, individually, as Personal Representative of the Estate of Jay Thomas Allen; and as Guardian of Jaylynne Allen, T'Jay Allen, and Lane Allen; John Allen; Diana Allen; Christa Allen; John C. Allen; and Todd Allen, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. CV 08–42–M–DWM.

United States District Court, D. Montana, Missoula Division.

Nov. 17, 2009.

Timothy M. Bechtold, Missoula, MT, for Plaintiffs.

George F. Darragh, Jr., Office of the U.S. Attorney, Great Falls, MT, for Defendant.

## ORDER

DONALD W. MOLLOY, District Judge.

### I. Introduction

Plaintiffs brought this action under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq., alleging Indian Health Services employees' medical negligence caused Jay Thomas Allen's disability and death. Plaintiffs include Jay Allen's surviving spouse Kathleen Adams individually, as personal representative of the Estate of Jay Thomas Allen, and as guardian of their children; Jay Allen's parents, John Allen and Diana Allen; and Jay Allen's siblings, Christa Allen, John C. Allen, and Todd Allen. Plaintiffs seek damages including those permitted under Montana's wrongful death and survival statutes. The United States moves for partial summary judgment to dismiss the wrongful death claims of the deceased's parents and siblings contending that they cannot recover for loss of consortium.

### II. Factual Background

Jay Thomas Allen, an enrolled member of the Assiniboine tribe, lived on the Fort Belknap Reservation with his common law wife Kathleen Adams and their three children, Jaylynne, T'Jay, and Lane Allen. Depo. Kathleen Adams 4:1–2, 7:2–9 (July 14, 2009). Jay worked as a self-employed cattle rancher and managed his father's cattle as well as his own. Depo. Kathleen Adams 9:7–15. Jay's father was a spiritual leader at Fort Belknap, and was training Jay, the eldest of his five children, to carry on the tradition. Def.'s State. of Undisputed Facts ("SUF") ¶¶ 3, 6, 7, Pl.'s State. of Genuine Issues ("SGI") 3.

On June 15, 2005, Jay was taken to Indian Health Services clinic in Harlem, Montana, at approximately 1:00 p.m. because he was acting strangely. Pl.'s Amend. Compl. ¶ 12. Health care providers at Indian Health Services determined that Jay had experienced an intracerebral hemorrhage and arranged emergency transportation for Jay to Billings Deaconess at about 6 p.m. Id. at ¶ 15. Ultimately, Benefis Hospital health care providers in Great Falls, Montana, treated Jay and determined that he had suffered a stroke. Id. at ¶¶ 16–17. Jay remained an inpatient at Benefis Hospital until July 28, 2005. Id. at ¶¶ 18–19. The stroke permanently impaired Jay's speech and caused paresis of his right side, which precluded him from ever using his right arm and which caused him to require the use of a walker. Depo. Diana Allen 11:23–12:24 (July 14, 2009).

Jay continued outpatient and self-directed rehabilitation for these disabilities until April 26, 2006. Pls.' Amend. Compl. ¶ 19. On that day, Jay was brought by ambulance to the Harlem Indian Health Services clinic because he was seizing. Id. at ¶ 20. After obtaining a CT scan at Northern Montana Hospital in Havre, Montana, Jay returned to Indian Health Services, but was sent home. Id. at ¶¶ 20–21. At home Jay suffered further seizures, and returned to the Indian Health Services clinic in cardiac arrest. Id. at ¶ 22. He died that evening. Id.

Plaintiffs filed an amended complaint on June 6, 2008. The complaint alleges Indian Health Service health care providers were negligent in failing to properly diag-

nose and treat Jay's condition and by unreasonably delaying assessment and treatment of Jay on both June 15, 2005 and April 26, 2006. The amended complaint alleges that this failure caused Jay's condition to deteriorate and eventually caused his disability and death. Plaintiffs seek damages under Montana's survival statute for Jay Thomas Allen's Estate. The Plaintiffs also seek damages available under Montana's wrongful death statutes.

Defendant United States moved for partial summary judgment to dismiss the claims of John and Diana Allen and Christa, John C. and Todd Allen. While the amended complaint does not set forth the specific claims as to each named plaintiff, both parties argue the validity of these plaintiffs' causes of action under Montana laws governing loss of consortium.

### III. Analysis

### A. Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). An adverse party may not rely on mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided, must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). If there is no genuine issue of material fact, the court must determine whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In resolving a motion for partial summary adjudication, the court will apply the same standards and criteria used for evaluating full motions for summary judgment. *California v. Campbell,* 138 F.3d 772, 780 (9th Cir.1998).

### B. Plaintiffs have offered sufficient evidence of the relationship between Jay Allen and his parents such that the parents' claims survive the motion for partial summary judgment.

Under the Federal Torts Claim Act, the United States is liable in tort "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 2672. Therefore, Montana law governs the tort issues as well as the measure of damages available. *Bear Medicine v. U.S.,* 192 F.Supp.2d 1053, 1065 (D.Mont.2002) (citations omitted).

 Montana provides relief for wrongful death:

> When injuries to and the death of one person are caused by the wrongful act or neglect of another, the personal representative of the decedent's estate may maintain an action for damages against the person causing the death, or, if the person is employed by another person who is responsible for the causing person's conduct, then also against the other responsible person.

Mont.Code Ann. § 27–1–513. Wrongful death damages are personal to those who survive the decedent, unlike damages in a survival action which are personal to the decedent. *Hern v. Safeco Insurance Company of Illinois,* 329 Mont. 347, 125 P.3d 597, 604–605 (2005). Damages for wrongful death "may be given as under all the circumstances of the case may be just." Mont.Code Ann. § 27–1–323. "Just" damages in wrongful death may include damages for the grief, sorrow and mental distress caused by the death of the decedent, as well as damages arising from loss of consortium. *Bear Medicine,* 192 F.Supp.2d at 1070. "Loss of consortium damages compensate the plaintiff for the loss of care, comfort, society and compan-

ionship of the decedent." *Id.* (quoting *Keele v. St. Vincent Hospital & Health Care,* 258 Mont. 158, 852 P.2d 574, 576 (1993)).

■ Wrongful death actions "must be combined in one legal action, and any element of damages may be recovered only once." Mont.Code Ann. § 27–1–501. Only one wrongful death action may arise out of an adult's wrongful death, and only the decedent's personal representative may bring that action. *Renville v. Fredrickson,* 324 Mont. 86, 101 P.3d 773, 777 (2004). A jury awards wrongful death damages to all heirs involved by a general verdict and the trial court allocates the proceeds among the heirs. *Swanson v. Champion Intern. Corp.,* 197 Mont. 509, 646 P.2d 1166, 1171 (1982). The personal representative holds proceeds for the heirs of the decedent separate from the decedent's estate. *Renville,* 101 P.3d at 777.

■ In Montana, parents may assert a claim for loss of consortium of their minor children. *Hern,* 125 P.3d at 606. This filial consortium is defined as a child's society, affection, and companionship to a parent. *Id.* (quoting *Black's Law Dictionary* 304 (7th ed., West 1999)). Montana recently recognized a valid loss of consortium claim by parents of an adult child. *Hern,* 125 P.3d at 608. The bond between parents and an adult child, and the loss experienced by parents at the death of their child, may be of such quality as to warrant recovery by the parents for loss of consortium. *Id.* To state a valid claim, there must be "significant evidence of an extraordinarily close and interdependent relationship" between the parents and the adult child. *Id.* "If sufficient evidence of such a quality relationship existed in the court's view, it is then the jury's responsibility to determine whether such a relationship actually existed, and, if so, whether it warranted recovery under a loss of consortium claim." *Id.* at 608. The Mon-

tana Supreme Court did not articulate a "hard and fast" rule by which to evaluate a loss of consortium claim for parents of an adult child, but measured the proof of the quality of the relationship against the facts in *Bear Medicine. Id.* at 608.

In *Bear Medicine,* 33–year old Leland Kicking Woman was seriously injured while pursuing a job on the Blackfeet Reservation. *Bear Medicine,* 192 F.Supp.2d at 1058–1059. During a tour of a timber harvesting site, Leland was hit by a falling tree when he pushed another man out of harm's way. *Id.* at 1059. He was paralyzed in the accident, and died nine months later from complications associated with those injuries. *Id.* at 1056. Leland was survived by his 80–year old mother, his 90–year old father, his wife, and six children. *Id.* at 1059–1060.

Testimony by his family members revealed that both of Leland's parents, George and Molly Kicking Woman, depended on Leland for physical, social, emotional, financial and spiritual support. *Id.* at 1060. Leland spent many hours with his parents and ran the family ranch and lease holdings. *Id.* at 1065. Leland's father, George Kicking Woman, had trained Leland to take over his role as spiritual leader. *Id.* at 1062–63. George Kicking Woman was the holder of the "Thunder Pipe Bundle," which is approximately 400 years old and is entrusted to a role model, spiritual guide, and advisor to members of the Tribe. *Id.* at 1062. Learning the bundle holder ceremonies and duties was very important to Leland, his parents, and the tribe. *Id.* Testimony also revealed the shock, depression and anxiety that Leland's death caused his family. *Id.* at 1065. Both Leland's parents sought psychological help to cope with the loss of their son. *Id.*

In *Bear Medicine,* this Court predicted the Montana Supreme Court would extend loss of consortium damages to the parents

of an adult child because parents "continue to enjoy a legitimate and predictable expectation of consortium beyond majority arising from the very bonds of the family relationship." *Id.* at 1068. Following the Montana Supreme Court's policy to foster the parent-child relationship, this Court found that the quality of the relationship, not the arbitrary age of the individuals involved, should govern the extent of damages recoverable. *Id.* at 1067–1068. Thus, this Court awarded loss of consortium damages to the decedent's spouse, children, and parents. *Id.* at 1057.

In the two cases considered by the Montana Supreme Court since *Bear Medicine*, both plaintiffs seeking loss of consortium for an adult child failed to meet the high standard set by *Bear Medicine*. In *Renville*, plaintiff sought damages for loss of consortium when her adult son died in an automobile accident. The trial court declined to expand Montana's law to recognize loss of consortium damages for the parents of an adult child. On appeal, the Montana Supreme Court held that Renville's loss of consortium claim failed not because Montana law did not recognize such a claim, but because the personal representative of her son's estate had already settled a wrongful death claim. *Id.* at 778. Thus, Renville lacked standing to pursue the loss of consortium claim because she was neither the personal representative of her son's estate nor his heir. *Id.*

In *Hern*, the Montana Supreme Court concluded that parents of an adult child may state a claim for loss of consortium in limited instances. *Hern*, 125 P.3d at 608. The Court reviewed the reasoning in *Bear Medicine*, and found that "under certain circumstances such as those evidenced by the relationship between Leland Kicking Woman and his parents, the bond between parents and an adult child, and the loss experienced by the parents may be of such quality as to warrant recovery by the parents for loss of consortium." *Id.* The Court set a purposefully high bar for the parents to meet in order to recover those damages: "significant evidence of an extraordinarily close and interdependent relationship must be presented before a court may consider awarding loss of consortium damages to the parents of an adult child." *Id.*

The *Hern* Court found that the personal representative and mother of the deceased failed to prove an exceptional relationship existed between the mother and adult child to recover for loss of consortium. *Id.* The Court distinguished the facts from *Bear Medicine*, because the decedent did not provide financial support to her parents, nor did she manage their property or holdings. The child also had no special role similar to Leland's spiritual leadership role in his tribe. *Id.* at 609. The Court vacated the loss of consortium damages for the mother of the deceased. *Id.* at 609. The Court also reversed the father's loss of consortium award because the jury awarded him damages separate from those awarded to the personal representative. *Id.* at 606.

■ Here, the United States argues Jay's parents do not have standing to bring the claim, arguing that because only the personal representative may bring the action, the other named plaintiffs (Jay's parents and siblings) should be dismissed. Def.'s Br. at 9. While *Hern* and *Renville* preclude the parents from bringing a separate action, they may be entitled to recover loss of consortium damages within this action if their relationship meets the level of proof adopted in *Hern*.[1]

---

1. The U.S. also contends that the parents should be dismissed from the claim because, pursuant to *Hern*, "the personal representative holds any recovery from a wrongful death action for the heirs of the decedent." Def.'s

Jay Allen's parents are John A. Allen and Diana Allen. John is 56 years old and is employed as tribal councilman for his third term at Fort Belknap. John owned about 50 cattle, which were managed by Jay. Jay did all the labor involved in running John's 50 cattle, John's mother's 25 cattle, and Jay Allen's own herd of 80 cattle. Depo. John Allen 29:1–30:6, (July 14, 2009). Since Jay's death, John has sold half his herd because he could not work and ranch full time, and because his other son who knew how to ranch was in school. *Id.* at 30:5–22, 33:18–22.

John is a spiritual leader of the Assiniboine, and he has been labeled a "medicine man." *Id.* at 24:3. John Allen, like his grandfathers, put on Sun Dances, which are large ceremonies that involve fasting, dancing, and performing sacrifices. *Id.* at 24:4–23. John Allen trained Jay to carry on these ceremonies, which had to be performed exactly the same each time. *Id.* at 26:9–10. While each of John's sons participated in the Sun Dances, only Jay demonstrated the ability to be strong minded, humble, and laid-back as required in these traditional ceremonies. *Id.* at 27:15–25. Since Jay's death, John must look for the right person with the appropriate personal characteristics to carry on the tradition of the Sun Dance. *Id.* at 37:18–38:5.

Jay's brother John C. Allen testified that Jay was very close with his parents. *Id.* at 16:18. Jay visited his parents every day. *Id.* at 16:18–19. Jay's mother testified that Jay was her handyman around the house: he would take care of the lawn, and fix broken windows, leaking faucets, and other broken appliances. Depo. Diana Allen 26:14–17. He would fix cars when they broke. *Id.* at 25:16. Jay also disciplined the other children. *Id.* at 25:11–18. Jay's mother testified that he was the rock of the family, her best buddy and her confidant. *Id.* at 23:16, 25:20–21.

Since Jay's death, his mother sought mental health counseling to deal with her grief despite the shame she felt in doing so. *Id.* at 26:18–24. Jay's father testified that he sought counseling from other spiritual leaders within the tribe. Depo. John A. Allen, 34:5–14. John also took a year off from putting on the Sun Dance the year after Jay died because he could not 'mentally and physically' put his heart into the work. *Id.* at 32:20–24.

It is the province of this court to determine whether significant evidence of an extraordinarily close and interdependent relationship could be found between the parent and adult child. *Hern*, 125 P.3d at 608. If insufficient evidence exists, this Court could so determine as a matter of law. *Id.* If sufficient evidence exists, then a fact finder is responsible for determining whether such a relationship actually existed to warrant loss of consortium damages. *Id.* The Court finds that Jay's parents have established significant evidence that an exceptional relationship existed between them sufficient to survive the motion for summary judgment. Like *Bear Medicine*, Jay spent many hours with his parents. Although Jay's parents were not exclusively dependent upon their son financially, Jay contributed to their financial

Br. at 9. Applying intestacy statutes to determine Jay's 'heirs', Jay's surviving spouse Kathleen should receive the entire estate. Mont.Code Ann. § 72–2–112(1)(b). Therefore, the U.S. contends, because Kathleen would receive all proceeds from the wrongful death claim, Jay's parents and siblings may not recover any damages in this action. While the U.S. correctly identified Jay Allen's

intestate heirs, these statutes would apply, if at all, to survival damages awarded to Jay's estate. In light of the Montana Supreme Court's recognition that parents may be compensated for loss of consortium of their adult children, the intestacy laws seem inapplicable to this motion. Wrongful death claims belong to the survivors while survival claims belong to the estate.

support by managing their cattle and by maintaining their property. Furthermore, Jay held a special role in his tribe similar to Leland's spiritual leadership role. Unlike *Hern* where the parents failed to show any special relationship to warrant loss of consortium claims, these facts closely parallel those in *Bear Medicine*. As a matter of law, there is sufficient evidence of an extraordinarily close and interdependent relationship between Jay and his parents. Pursuant to *Hern*, a fact finder must determine at trial whether the close relationship actually existed to warrant the loss of consortium claim. *Hern*, 125 P.3d at 608. Thus, the United States' motion for partial summary judgment as to the parents' loss of consortium claims is denied.

### C. The United States is entitled to summary judgment as to the claims of Jay Allen's siblings, Christa Allen, John C. Allen and Todd Allen.

■ Plaintiffs argue the Court should apply the rationale adopted in *Hern* to loss of consortium claims brought by siblings of adult children. Pls.' Br. at 2. The Montana Supreme Court has not yet addressed whether siblings may state a claim for loss of consortium of a deceased adult. However, it is unlikely the Montana Supreme Court would permit recovery for loss of sibling consortium.

Montana's expansion of wrongful death law to include a loss of consortium claim by parents of an adult child was a relatively small one. The expansion furthered the established policy in Montana to protect the parent-child relationship by permitting recovery for impaired parent-child relationships regardless of the child's age. *Hern*, 125 P.3d at 611. Expanding loss of consortium claims from parents of minor children to parents of minor and adult children arose out of a protected relationship in existing wrongful death law. No similar claim exists in Montana's wrongful death law for siblings of minor children to

support a parallel expansion for siblings of adult children. Thus, the Montana Supreme Court would not likely permit recovery by siblings for loss of consortium.

Even if this Court applied the *Hern* standard used to measure parent's claims for loss of consortium of an adult child to that adult child's siblings, the testimony before this Court does not meet the high bar the Plaintiffs suggest this Court adopt. None of Jay's siblings relied on Jay for financial support, nor did they seek counseling to cope with his death. While those facts alone are not dispositive, the testimony included above does not meet the *Hern* standard of "significant evidence of an extraordinarily close and interdependent relationship," as evidenced by Leland's relationship with his parents in *Bear Medicine*.

Further, in the few states within the Ninth Circuit which recognize sibling claims, recovery is available in limited circumstances. For example, under Washington's wrongful death statute, a personal representative may maintain a claim for damages for the benefit of parents and siblings only where the deceased leaves no surviving spouse or child living, and only if those parents or siblings are "dependent for support" on the deceased person. *Long v. Dugan*, 57 Wash.App. 309, 788 P.2d 1 (1990). Similarly, in Arizona, a sibling may recover only if there are no primary survivors, and recovery would occur through the estate of the decedent. *Solomon v. Harman*, 107 Ariz. 426, 489 P.2d 236, 240 (1971). Even in these jurisdictions, Jay's siblings' claims fail because they were not financially dependent upon Jay and because Jay left a surviving spouse, children, and parents.

The Montana Supreme Court is unlikely to further expand its loss of consortium law to provide a claim for loss of sibling consortium, and the facts set forth by

Plaintiffs would not support such a claim. The United States is entitled to summary judgment on the claims of Christa Allen, John C. Allen, and Todd Allen.

### IV. Conclusion

IT IS HEREBY ORDERED that the United States' motion for partial summary judgment (dkt. # 16) is GRANTED IN PART and DENIED IN PART. It is granted as to the claims of Jay Allen's siblings, Christa Allen, John C. Allen, and Todd Allen. It is denied as to the claims of Jay Allen's parents, John Allen and Diana Allen.