OP 13-0294

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 230

_____

IN THE MATTER OF THE ESTATE OF
JEREMIAH BENNETT

O P I N I O N
A N D
O R D E R

_____

¶1      Abel Robert Bennett and Judy Bennett have petitioned this Court to exercise supervisory control over the Twentieth Judicial District Court, and determine the District Court is proceeding under a mistake of law by its April 18, 2013 order holding that Bennetts are not entitled to claim damages resulting from the wrongful death of their adult son, Jeremiah Bennett.  We grant the petition.

## BACKGROUND

¶2      The underlying action is a dispute regarding the administration of the estate of Jeremiah Bennett (Jeremiah).  Jeremiah died as a result of injuries sustained in a motor vehicle accident on September 8, 2012.  Jeremiah is survived by two minor children he had with his former wife, Sabrina Bennett (Sabrina), and his parents, Abel Robert Bennett and Judy Bennett (Bennetts).  Sabrina is the court-appointed guardian and conservator for the two minor children.  Jeremiah's fiancée, Christina Jackson, was also

killed in the accident, and his two minor children suffered serious injuries. Jeremiah died intestate.

¶3 The District Court informally appointed Abel Robert Bennett (Abel Robert) personal representative of the Estate of Jeremiah Bennett (Estate) on October 19, 2012. On November 14, 2012, Sabrina petitioned the District Court to remove Abel Robert and appoint her as personal representative. After hearing, the District Court granted Sabrina's requests. The District Court's granting of Sabrina's petition for formal probate and for removal of Abel Robert as personal representative was the subject of an interlocutory appeal. *In re the Estate of Bennett*, 2013 MT 228, ___ Mont. ___, ___ P.3d ___.

¶4 On March 4, 2013, Sabrina petitioned the District Court for a declaration that the Bennetts had no standing to claim wrongful death damages as a result of Jeremiah's death. The same day, Bennetts filed a motion to intervene, arguing that their wrongful death claims were not being recognized or pursued by Sabrina in her role as personal representative. Bennetts conceded that they did not have a viable claim for loss of consortium under this Court's precedent, *see Hern v. Safeco Ins. Co. of Ill.*, 2005 MT 301, ¶ 58, 329 Mont. 347, 125 P.3d 597, but maintained they could claim damages for grief, sorrow, and mental anguish that Sabrina, as personal representative of Jeremiah's estate, had a fiduciary duty to advance on their behalf. After a hearing, the District Court entered its Findings of Fact, Conclusions of Law, and Order on April 18, 2013 (Order), holding that "the minor children of the decedent are the sole heirs of the estate under the

2

laws of intestate succession and therefore have priority over any wrongful death and survivorship claims." The Order continued:

> . . . [T]he Court does not accept Abel Robert and Judy's argument that because the parents in *Hern* recovered grief, sorrow and mental anguish, through the personal representative, that Abel Robert and Judy may also personally recover those damages. Becky Hern's parents were her "heirs." In this case, Jeremiah's [minor children] are his only heirs under the Montana laws in intestate succession and therefore have the exclusive right to recover wrongful death damages for grief, sorrow and mental anguish.
>
> That because Abel Robert and Judy are neither intestate heirs nor statutory heirs . . . any claims to wrongful death damages for grief, sorrow and mental anguish are subordinate to those of decedent's minor children. They lack standing to participate, object or intervene in any estate proceedings or wrongful death claims arising out of Jeremiah's death.

The Order granted Sabrina's petition for declaratory relief, and denied Bennetts' motion to intervene, concluding "[Bennetts] are not entitled to wrongful death benefits arising out of Jeremiah's death as they concede they lack the relationship requirement for loss of consortium and they are not entitled to grief, sorrow, and mental anguish benefits."

¶5 Bennetts petitioned this Court for supervisory control, and we ordered that a response be filed by Sabrina and, if it desired, the District Court. Sabrina has filed a response. On Bennetts' motion, we imposed a stay preventing Sabrina from releasing any of Bennetts' claims and from entering agreements for allocation of insurance proceeds, until the matters pending before this Court were resolved.

¶6 The subject of this petition is whether the District Court erred as a matter of law by concluding the Bennetts are not entitled to claim wrongful death damages for grief, sorrow, and mental anguish under § 27-1-513, MCA, for the death of Jeremiah, their adult child.

3

**DISCUSSION**

¶7 This Court "has general supervisory control over all other courts." Mont. Const. art. VII, § 2(2). "Supervisory control is an extraordinary remedy, reserved for extraordinary circumstances." *Stokes v. Mont. Thirteenth Jud. Dist. Ct.*, 2011 MT 182, ¶ 5, 361 Mont. 279, 259 P.3d 754 (citing *Hegwood v. Mont. Fourth Jud. Dist. Ct.*, 2003 MT 200, ¶ 6, 317 Mont. 30, 75 P.3d 308). Acceptance of supervisory control is decided on a case-by-case basis and is "limited to cases involving purely legal questions, in which the district court is proceeding under a mistake of law causing a gross injustice or constitutional issues of statewide importance are involved." *Stokes*, ¶ 5 (citing M. R. App. P. 14(3)). We may assume supervisory control to direct the course of litigation if the district court "is proceeding based on a mistake of law, which if uncorrected, would cause significant injustice for which appeal is an inadequate remedy." *Stokes*, ¶ 5 (citing *Simms v. Mont. Eighteenth Jud. Dist. Ct.*, 2003 MT 89, ¶ 18, 315 Mont. 135, 68 P.3d 678).

¶8 We conclude that the circumstances warrant exercise of supervisory control. Bennetts may not initiate an interlocutory appeal from the denial of their motion to intervene. M. R. App. P. 6; *Continental Ins. Co. v. Bottomly*, 233 Mont. 277, 279, 760 P.2d 73, 75 (1988) (citing former M. R. App. P. 1). An appeal from a final judgment could potentially invalidate a complex settlement now being negotiated among multiple claimants and insurers, a process from which Bennetts have been excluded. Bennetts present a purely legal question: whether the District Court erred by concluding the

4

Bennetts may not receive wrongful death damages for grief, sorrow, and mental anguish as a matter of law under § 27-1-513, MCA, for the death of their adult son. We have determined that clarification is necessary regarding who is entitled to claim wrongful death damages.

¶9 Bennetts argue that Montana law recognizes a claim for grief, sorrow, and mental anguish by parents for the wrongful death of an adult child because there is no requirement that a claimant for wrongful death damages be a probate heir or "heir in law." Sabrina responds that Bennetts are not "heirs" as defined by the intestacy statutes, that Jeremiah's minor children are the only such heirs, and that allowing Bennetts to claim wrongful death damages contradicts Montana law, citing *Hern*, ¶¶ 46, 47, 62. We begin with a general review of wrongful death actions.

¶10 In an action for wrongful death under § 27-1-513, MCA, "damages may be given as under all the circumstances of the case may be just." Section 27-1-323, MCA. "When injuries to and the death of one person are caused by the wrongful act or neglect of another, the personal representative of the decedent's estate may maintain an action for damages against the person causing the death . . ." Section 27-1-513, MCA. Montana's wrongful death statute is considered a "general loss" statute. *See* James L. Isham, *Recovery of Damages for Grief or Mental Anguish Resulting from Death of Child – Modern Cases*, 45 A.L.R.4th 234, 241 (1986) (explaining the three major categories of statutory damages for wrongful death: "all-inclusive," which specifically enumerates the types of available wrongful death damages; "general loss," which provides for awards of

5

"such damages that are just"; and "pecuniary loss," which limits recovery to economic losses of beneficiaries).

¶11 Some jurisdictions statutorily identify the particular survivors who may recover under the wrongful death statutes and further classify available benefits to each class of survivor. *See* Jacob A. Stein, *Stein on Personal Injury Damages* §§ 3:2-3:3 (Gerald W. Boston, ed., 3d ed., West 1997) (citing statutes and cases). Montana does not statutorily define wrongful death claimants, but through the common law has identified survivors who may claim wrongful death damages, as well as the parameters of recovery. *See i.e. Batchoff v. Butte Pacific Copper Co.*, 60 Mont. 179, 198 P. 132 (1921); *State ex rel. Carroll v. First Jud. Dist. Ct.*, 139 Mont. 367, 364 P.2d 739 (1961); *Swanson v. Champion Intl. Corp.*, 197 Mont. 509, 646 P.2d 1166 (1982); *Dawson v. Hill & Hill Truck Lines*, 206 Mont. 325; 671 P.2d 589 (1983); *Johnson v. Marias River Elec. Coop., Inc.*, 211 Mont. 518, 687 P.2d 668 (1984); *Renville v. Fredrickson*, 2004 MT 324, 324 Mont. 86, 101 P.3d 773; and *Hern v. Safeco Ins. Co. of Ill.*, 2005 MT 301, 329 Mont. 347, 125 P.3d 597.

¶12 In *Swanson*, this Court distinguished wrongful death and survival actions.[1] We explained that a survival action is personal to the decedent for damages suffered by the decedent between the wrongful act and his death. Any recovery for such damage belongs

---

[1] *Swanson* involved an appeal from the Workers' Compensation Court in which we held that the decedent's wife was entitled to noneconomic wrongful death damages as part of the workers' compensation settlement. *Swanson*, 197 Mont. at 527, 646 P.2d at 1174. Nonetheless, *Swanson*'s discussion of wrongful death and survival claims has been cited and relied upon for tort cases generally. *See i.e. Johnson v. Marias River Elec. Coop., Inc.*, 211 Mont. 518, 687 P.2d 668 (1984); *Starkenburg v. State,* 282 Mont. 1, 934 P.2d 1018 (1997).

to the decedent's estate and is administered as an estate asset. *Swanson*, 197 Mont. at 515-16, 646 P.2d at 1169. In contrast, a wrongful death action seeks damages that "pertain to the *personal* loss of the *survivors*." *Swanson*, 197 Mont. at 517, 646 P.2d at 1170 (emphasis in original). We explained that:

> Such damages do not belong to the decedent's estate. They are not subject to the claims of decedent's creditors. They are not part of the estate for the determination of inheritance taxes . . .
>
> . . . The distribution of the [wrongful death] damages to the heirs is not controlled by the decedent's will or by the laws of intestate succession.

*Swanson*, 197 Mont. at 517-18, 646 P.2d at 1170-71. Although occasionally using the term "heirs" in *Swanson*, it is clear from the context of the entire discussion that we were not limiting those "survivors" who could bring a wrongful death claim to only intestate heirs.

¶13 Several decisions prior to *Hern* addressed the issue of which survivors were permitted to claim wrongful death damages. In *Carroll*, the decedent's widow and his four children, three of which were from a previous marriage, were allowed to pursue wrongful death damages. *Carroll*, 139 Mont. at 372, 364 P.2d at 741-42. In *Versland v. Caron Transport*, 206 Mont. 313, 671 P.2d 583 (1983), the nonadopted minor stepchildren of the decedent were not permitted to claim loss of consortium and support. *Versland*, 206 Mont. at 324, 671 P.2d at 589. In so concluding, we noted that "nonadopted stepchildren of a decedent are not heirs as defined by the intestacy statutes." *Versland*, 206 Mont. at 323, 671 P.2d at 588. In *Johnson*, we again recognized that the

7

minor children of the decedent and the decedent's surviving spouse were all "proper parties" in the wrongful death action. *Johnson*, 211 Mont. at 525, 687 P.2d at 671. In *Dawson*, we held that wrongful death damages, including sorrow, mental distress, or grief, could be recovered by parents of deceased minor children. *Dawson*, 206 Mont. at 333, 671 P.2d at 594. In *Bear Medicine v. U.S.*, 192 F. Supp. 2d 1053, 1070 (D. Mont. 2002), the U.S. District Court concluded that parents could recover wrongful death damages for the death of their adult son, in addition to the decedent's spouse and children.

¶14 In 1987, the Montana Legislature enacted legislation requiring survival actions under § 27-1-501, MCA, and wrongful death actions under § 27-1-513, MCA, to be "combined in one legal action, and any element of damages may be recovered only once." Section 27-1-501, MCA. We addressed this statutory "one action rule" in *Renville*, wherein the adult decedent's personal representative filed and settled a wrongful death action but did not advance a claim on behalf of the decedent's mother. *Renville*, ¶ 22. The decedent's mother attempted to bring a subsequent wrongful death action, seeking damages for negligent infliction of emotional distress and loss of consortium. *Renville*, ¶¶ 16-17. We affirmed the district court's grant of summary judgment, stating "[a]llowing a separate loss of consortium action by someone other than a personal representative would create a multiplicity of lawsuits arising from the same wrongful death. Such multiple actions are in contravention of legislative intent." *Renville*, ¶ 24.

8

We also noted that, because the mother was not Sorenson's heir, she lacked standing to bring a wrongful death claim for her adult son's death. *Renville*, ¶ 23.

¶15 The common law developed further in *Hern*, where this Court recognized that parents of an adult decedent may recover wrongful death damages for loss of consortium when there was "significant evidence of an extraordinarily close and interdependent relationship," adopting the test applied in *Bear Medicine*. *Hern*, ¶¶ 58, 68. Although not expressly discussed, our decision in *Hern* also implicitly approved of recovery of wrongful death damages for grief, sorrow, and mental anguish by parents of a deceased adult child. Ardell Hern, the mother of adult decedent Becky Hern, brought a wrongful death claim as the personal representative of Becky's estate, on behalf of Becky's survivors. *Hern*, ¶ 9. Becky's father, Robert, also submitted his own claim and was listed separately on the special verdict form. *Hern*, ¶ 15. The jury awarded $300,000 to Ardell for loss of consortium, $200,000 to Robert for loss of consortium, $450,000 to Ardell for grief, sorrow, and mental anguish, and $300,000 to Robert for grief, sorrow, and mental anguish. *Hern*, ¶ 15. We vacated Robert's awards for loss of consortium and for grief, sorrow, and mental anguish because it was impermissible for him to be awarded personal damages separate from those claimed by the personal representative. *Hern*, ¶¶ 47, 64-65.[2] We concluded that the wrongful death claims brought by Ardell, as personal representative of Becky's estate, were proper. *Hern*, ¶¶ 48-62. The loss of

---

[2] *See also Swanson*, 197 Mont. at 518, 646 P.2d at 1171 ("The jury is not given the duty of ascribing so much to one heir and so much to another. Rather, the trial court, after the verdict, is given the task of allocating the money damages among the heirs.").

consortium award to Ardell was vacated because we concluded that evidence of the relationship between Becky and her parents did not satisfy the "high level of proof" that there was "significant evidence of an extraordinarily close and interdependent relationship." *Hern*, ¶¶ 58, 61. However, we upheld Ardell's $450,000 award for grief, sorrow, and mental anguish, reasoning that "[a]s personal representative of Becky's estate, Ardell was entitled to pursue such damages on behalf of herself and Becky's heirs." *Hern*, ¶ 62. Pursuant to our precedent, this award was not Ardell's personal award, but was to be allocated by the trial court among Becky's survivors. *See Swanson*, 197 Mont. at 517-18, 646 P.2d at 1170 ("any recovery made by the personal representative in the wrongful death claim is not in his capacity as personal representative. He is a *trustee* of the moneys for the person entitled." (Emphasis in original.)); *see also Renville*, ¶ 21 ("The personal representative holds the proceeds of any damage award for the heirs of the decedent and the award does not become part of the decedent's estate.").

¶16     In 2009, the United States District Court for the District of Montana reviewed our precedent in deciding *Adams v. U.S.*, 669 F. Supp. 2d 1203 (D. Mont. 2009). In *Adams*, the decedent, Jay Allen, was survived by his spouse, Kathleen Adams, three children, his parents, and several siblings. Kathleen was named the personal representative and brought a survival claim and wrongful death claims on behalf of herself and Jay's children, parents, and siblings for loss of consortium. *Adams*, 669 F. Supp. 2d at 1205-06. The defendant moved for partial summary judgment and dismissal of the loss

10

of consortium claims of Jay's parents and siblings, because "[a]pplying intestacy statutes to determine Jay's 'heirs', Jay's surviving spouse Kathleen should receive the entire estate." *Adams*, 669 F. Supp. 2d at 1208 n. 1. In denying this argument, the U.S. District Court reasoned:

> [T]he [defendant] contends, because Kathleen would receive all proceeds from the wrongful death claim, Jay's parents and siblings may not recover any damages in this action. While the [defendant] correctly identified Jay Allen's intestate heirs, these statutes would apply, if at all, to survival damages awarded to Jay's estate. In light of the Montana Supreme Court's recognition that parents may be compensated for loss of consortium of their adult children, *the intestacy laws seem inapplicable to this motion. Wrongful death claims belong to the survivors while survival claims belong to the estate.*

*Adams*, 669 F. Supp. 2d at 1208 n. 1 (emphasis added).[3]

¶17   We conclude that the U.S. District Court's reasoning in *Adams* is appropriate. As Jeremiah's personal representative, Sabrina is advancing claims for survival damages and wrongful death damages. Under the survival claim, Jeremiah's minor children are his only intestate heirs and they will receive any survival damages that are recovered, upon administration of the Estate. However, wrongful death damages are personal to the survivors. Such damages, when recovered, are paid without regard to the intestate succession statutes, and are not controlled by the intestate succession statutes. *Swanson*, 197 Mont. at 518, 646 P.2d at 1171. There is no statutory prohibition of parental claims.

---

[3] The U.S. District Court ultimately dismissed the siblings' claims, concluding that this Court had not approved sibling loss of consortium claims and was unlikely to do so. *Adams*, 669 F. Supp. 2d at 1210. The U.S. District Court also held that Jay's parents had satisfied the "extraordinarily close and interdependent relationship" test and therefore could recover damages for loss of consortium under *Hern*. *Adams*, 669 F. Supp. 2d at 1208-10.

We have approved wrongful death claims by survivors other than the decedent's intestate heirs. *See Johnson*, 211 Mont. at 525, 687 P.2d at 671; § 72-2-202, MCA (1981). In *Hern*, our analysis did not limit loss of consortium claims for deceased adult children to parents who were intestate heirs. We implicitly approved in *Hern* parental recovery of damages for grief, sorrow, and mental anguish.

¶18 Therefore, we conclude that Bennetts, as Jeremiah's parents, are entitled to recover wrongful death damages, including damages for grief, sorrow, and mental anguish. Such damages are personal to them as Jeremiah's parents and survivors, but would be pursued by the personal representative of the Estate on the Bennetts' behalf in one action, along with all other claims. Section 27-1-501, MCA; *Renville*, ¶ 24. If the action proceeds to trial, and damages are awarded, the District Court will apportion the wrongful death damages among the claimants. *Swanson*, 197 Mont. at 518, 646 P.2d at 1171 ("When a wrongful death action is prosecuted, the damages are returned by general verdict, covering all the heirs involved. The jury is not given the duty of ascribing so much to one heir and so much to another. Rather, the trial court, after the verdict, is given the task of allocating the money damages . . .").

¶19 In conclusion, the portion of the District Court's Order denying the Bennetts the opportunity to recover wrongful death damages for grief, sorrow, and mental anguish was in error. We acknowledge, in defense of the District Court, that in the past we have been neither consistent in our analyses and holdings, nor precise in the use of the term "heirs." We thus accept the petition and issue the writ to provide clarification on this issue.

12

¶20    IT IS HEREBY ORDERED that the Petition for Writ of Supervisory Control is GRANTED in part.

¶21    IT IS FURTHER ORDERED that the portion of the District Court Order of April 18, 2013, holding that Bennetts cannot recover wrongful death claims as a matter of law is VACATED.  This case is remanded to the District Court for further proceedings consistent with this opinion.

¶22    IT IS FURTHER ORDERED that the procedural motions pending herein are DENIED and the stay previously entered herein is VACATED.

¶23    The Clerk of this Court is directed to provide copies of this Order to all counsel of record and the Honorable C.B. McNeil, Twentieth Judicial District Court Judge, presiding.

DATED this 20th day of August, 2013.


/S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ BRIAN MORRIS

13