Chief Justice Mike McGrath delivered the Opinion of the Court.
¶ 1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.
¶ 2 Davey McMillan appeals from a March 5, 2018 Eighth Judicial District Court order determining the allocation and distribution of settlement proceeds. We affirm.
¶ 3 Tahnia Santiago and Davey McMillan are the parents of the deceased, Jennifer Boushee. On July 12, 2015, when Ms. Boushee was nineteen years old, she illegally purchased alcohol from a Holiday gas station and attended a house party where she consumed alcohol. That evening, Ms. Boushee drove under the influence of alcohol and died shortly after her vehicle was involved in a highspeed accident.
¶ 4 Ms. Boushee died intestate. Santiago, without objection from McMillan, was appointed personal representative of Ms. Boushee's estate on October 5, 2015. In her capacity as personal representative, Santiago pursued wrongful death and survival claims against Holiday Stationstores and the owners of the home where the party was located.[1]
¶ 5 The claims against Holiday Stationstores were settled preceding litigation for $325,000 without allocating specific amounts to wrongful death or survival damages. The District Court approved the settlement, without objection from McMillan. After attorney's fees, costs, and expenses, $204,866.39 remained for distribution.
¶ 6 On August 2, 2017, Santiago filed a motion requesting the District Court to allocate and distribute the remainder of the settlement proceeds. After a hearing, the District Court allocated $194,136.43 to the survival action and the remaining $10,729.96 to wrongful death damages. The District Court held that McMillan could not inherit any portion of the survival damages and awarded him $7.51 in wrongful death damages. The District Court also denied McMillan's motion to remove Santiago as personal representative, finding that she had not breached her fiduciary duty as McMillan claimed.
¶ 7 We review a district court's conclusions of law to determine whether they are correct and its findings of fact to determine whether they are clearly erroneous. Pilgeram v. GreenPoint Mortg. Funding, Inc ., 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839. We review a district court's decision regarding removal of an estate's personal representative for an abuse of discretion. In re Estate of Anderson-Feeley , 2007 MT 354, ¶ 6, 340 Mont. 352, 174 P.3d 512. We review discretionary trial court rulings, including trial administration issues and evidentiary rulings, for abuse of discretion. State v. Price , 2006 MT 79, ¶ 17, 331 Mont. 502, 134 P.3d 45.
¶ 8 McMillan asserts that the District Court's allocation of survival damages was not supported by sufficient evidence and that he is entitled to inherit survival damages from the estate.
¶ 9 When a decedent's death was caused by the negligence of another, the personal representative may pursue a survival action against the responsible party on the decedent's behalf. Sections 27-1-501(1), 72-3-604, MCA ; Swanson v. Champion Int'l Corp ., 197 Mont. 509, 515, 646 P.2d 1166, 1169 (1982). Damages recoverable in a survival action are personal to the decedent and belong to his or her estate. They do not include damages suffered by the decedent's heirs. Marinkovich v. Tierney , 93 Mont. 72, 86, 17 P.2d 93, 96 (1932). When a decedent dies intestate, the survival damages are administered in accordance with the intestate succession statutes. In re Estate of Bennett , 2013 MT 230, ¶ 12, 371 Mont. 275, 308 P.3d 63. In Montana, the personal representative may not seek survival damages if the decedent dies instantaneously. Dillon v. Great Northern Ry. Co ., 38 Mont. 485, 503, 100 P. 960, 966 (1909). The cause of action must have existed in the lifetime of the decedent to fall under the survivorship statute. Swanson , 197 Mont. at 516, 646 P.2d at 1169. Both economic and noneconomic damages may be recovered in a survival action including medical costs, funeral expenses, and lost wages. Swanson , 197 Mont. at 516, 646 P.2d at 1170. The estate may also be compensated for any pain, suffering, or disfigurement the decedent experienced prior to his or her death. Swanson , 197 Mont. at 516, 646 P.2d at 1170.
¶ 10 Survival damages were available to the estate because Ms. Boushee did not die instantaneously.
¶ 11 The record supports the District Court's allocation of $194,136.43 toward the survival action. The District Court noted Ms. Boushee's age at the time of her death and heard testimony contemplating Ms. Boushee's future earning capacity. Mr. Winter, counsel to Santiago in her capacity as personal representative, testified to the economic analysis prepared before settlement negotiations and discussed that Ms. Boushee's economic damages may have ranged from $800,000 to $1,700,000. While the original demand on Holiday Stationstores was $1,400,000, the claims were settled for $325,000. Funeral and medical expenses were not a part of the demand. The District Court was aware that the claim fell under Montana's Dram Shop Act, which limited the non-economic damages to $250,000. Section 27-1-710(7), MCA.
¶ 12 To reach the $194,136.43 figure, the District Court estimated the economic damages constituted approximately 85% of the $1,400,000 demand. Accordingly, the District Court took 85% of the remaining $204,866.39 to reach its apportionment of $174,136.43 toward economic damages. The District Court then allocated $20,000 toward noneconomic damages, based on the District Court's experience with relatively low noneconomic damages, especially when a jury could find the decedent was somehow at fault. Here, the District Court felt that a jury would find Ms. Boushee at fault for driving under the influence at speeds of approximately ninety miles per hour. The District Court's analysis left $194,136.43 allocated toward survival damages, with the remaining $10,729.96 going to wrongful death damages.
¶ 13 The record demonstrates that the District Court's allocation was supported by sufficient evidence. The District Court took judicial notice of relevant facts and law, considered witness testimony, and applied its experience with similar damage awards. The District Court's conclusion did not amount to clear error.[2]
¶ 14 McMillan asserts the District Court erred when it precluded him from inheriting any survival damages. Because Ms. Boushee was unmarried and did not have children, the intestacy statutes dictate that her estate shall pass equally to her surviving parents. Section 72-2-113(1)(b), MCA. However, before a parent can inherit from their child, Montana requires that the parent "openly treated the child as the parent's and has not refused to support the child." Section 72-2-124(3), MCA. McMillan argues that the vehicle he gave Ms. Boushee on her birthday amounted to the statutorily required support. We agree with the District Court that McMillan's birthday present to Ms. Boushee was a gift that does not qualify as support. During Ms. Boushee's lifetime, McMillan never voluntarily provided support. Even when ordered to pay child support, he failed to make a single payment until after Ms. Boushee's death. The District Court was correct in its application of § 72-2-124(3), MCA.
¶ 15 McMillan also challenges the District Court's formula for allocation of wrongful death damages between himself and Santiago. When the death of one person is caused by the wrongful act or neglect of another, the personal representative of the decedent's estate may maintain an action for damages against the person causing the death. Section 27-1-513, MCA. Wrongful death damages are awarded for grief, loss, sorrow, and loss of consortium, etc. Unlike survival actions, wrongful death actions are personal to the survivors; they are not a part of the intestate estate. In re Estate of Bennett, ¶ 17. In Montana, wrongful death damages "may be given as under all the circumstances of the case may be just," making Montana's statute a "general loss" statute. Section 27-1-323, MCA ; In re Estate of Bennett , ¶ 10. In addition to general damages, parents of an adult child may also seek damages for loss of consortium. Recovery under this theory requires heightened proof of an "extraordinarily close and interdependent relationship" between the parents and the adult child. Hern v. Safeco Ins. Co. of Ill., 2005 MT 301, ¶ 58, 329 Mont. 347, 125 P.3d 597 ; In re Estate of Bennett , ¶ 15. In the event of a recovery for wrongful death, the district court may allocate the amount of recovery in a proper pro rata share among the surviving heirs. State ex rel. Carroll v. Dist. Court , 139 Mont. 367, 372, 364 P.2d 739, 741 (1961). The District Court may allocate "just" damages based on substantial evidence. In re Estate of Farnum , 224 Mont. 304, 312, 730 P.2d 391, 396 (1986).
¶ 16 McMillan claimed both general wrongful death damages and loss of consortium. The District Court concluded that although McMillan was entitled to general wrongful death damages, he was not entitled to loss of consortium damages considering he and Ms. Boushee lacked a sufficiently close and interdependent relationship.
¶ 17 The District Court believed that McMillan suffered from grief and mental anguish. Consequently, the District Court awarded him $7.51 in general damages. The District Court reached this figure by calculating that McMillan had only been in Ms. Boushee's life for a total of five days of the approximately 6,935 days she lived, or about 0.07%-when multiplied by the $10,729.96 allocated for wrongful death damages, this amounts to approximately $7.51. This result is supported by substantial evidence. McMillan only spent five days with Ms. Boushee throughout her lifetime. Alternatively, Santiago raised and maintained a consistent relationship with Ms. Boushee. Thus, the District Court did not abuse its discretion when it determined that Santiago was entitled to the bulk of the wrongful death damages.
¶ 18 The District Court's decision to deny McMillan loss of consortium damages is further supported by substantial evidence. The District Court noted that McMillan "had the most minimal contact with a child this Court has ever seen." McMillan rarely spoke to or saw Ms. Boushee throughout her nineteen years. McMillan did not even attend Ms. Boushee's funeral. The relationship between McMillan and Ms. Boushee was virtually nonexistent, not extraordinarily close and interdependent.
¶ 19 The District Court did not err when it found that Santiago fulfilled her fiduciary duties as personal representative. In Montana, personal representatives have a fiduciary duty to use their authority to pursue the best interests of successors to the estate, this includes the duty to pursue wrongful death actions on behalf of those eligible to recover such damages. Section 72-3-610, MCA. A person with an interest in the estate may petition for removal of a personal representative for cause at any time. Section 72-3-526(1), MCA. Cause for removal exists when removal would be in the best interests of the estate, or the personal representative has mismanaged the estate or failed to perform any duty pertaining to the office. Section 72-3-526(2)(a), (b), MCA.
¶ 20 McMillan claims that Santiago should have been removed as personal representative because she sought remuneration for her own benefit and not McMillan's. According to McMillan, this amounted to a breach of her fiduciary duty. Santiago's motivations for pursuing the settlement are irrelevant. Santiago appropriately sought both wrongful death damages on behalf of successors and survival damages on behalf of the estate-effectively executing her fiduciary duties. Furthermore, once the proceeds of the settlement were recovered, it was up to the District Court to allocate the damages. Thus, Santiago had no control over how the District Court would divide the proceeds between herself and McMillan. Santiago adequately discharged her fiduciary duties and the District Court did not abuse its discretion when it denied McMillan's motion to remove Santiago as personal representative.
¶ 21 McMillan further asserts that he was denied due process because Santiago did not bring claims on his behalf and he cannot bring a loss of consortium suit on his own. Because Santiago pursued claims on McMillan's behalf, there is no evidence to support his assertion that his due process rights were violated.
¶ 22 McMillan also claims that Mr. Winter's testimony was improper. McMillan argues that the District Court permitted Mr. Winter to testify to damages without first being qualified as an expert witness. Mr. Winter did not testify as an expert witness. Rather, he testified to the facts of the underlying settlement with Holiday Stationstores. At no point did Mr. Winter offer an opinion as to how the settlement should be allocated. In fact, he readily acknowledged that allocation was for "the court to determine." Next, McMillan argues that Mr. Winter's references to the earning capacity analysis violated the rules against hearsay. The District Court asked Mr. Winter: "In your economic workup that you did on the case, what was your assertion of the loss of earning capacity?" Winter responded that his demand ranged from $800,000 to $1,700,000, depending on whether Ms. Boushee obtained a college degree. This response does not fall under the hearsay rule because it was not being offered to prove the truth of the matter asserted. M. R. Evid. 801(c). Mr. Winter simply testified to what the original demand was in the underlying settlement negotiations.
¶ 23 Finally, McMillan asserts that he was unfairly prejudiced by the District Court's questioning of the witnesses, which, he argues, amounted to advocacy in favor of Santiago. It is well settled that the presiding judge may, in his or her discretion, direct pertinent questions to elicit the truth, clear up any obscurity in the testimony, or to facilitate the progress of the trial. State v. McConville , 64 Mont. 302, 308, 209 P. 987, 989 (1922). The District Court posed neutral questions such as, "Were there any other economic-related damages that you were claiming?" and "Did you have any liens that you needed to satisfy out of the settlement proceeds?" These questions were within the province of the District Court and did not amount to advocacy in favor of Santiago.
¶ 24 The District Court's conclusions of law were correct, and its findings of fact were not clearly erroneous. The allocation and distribution of the settlement proceeds are affirmed.
¶ 25 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's ruling was not an abuse of discretion.
¶ 26 Affirmed.
We Concur:
DIRK M. SANDEFUR, J.
JAMES JEREMIAH SHEA, J.
BETH BAKER, J.
INGRID GUSTAFSON, J.

The suit against the homeowners was still pending when the District Court issued its ruling.

In its conclusions of law, the District Court stated that wrongful death actions are personal to the decedent-this was an incorrect statement of the law. Despite this misstatement, the District Court's application of the law was correct.